**CE-94-764**                                                      **1**

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| EL PUEBLO DE PUERTO RICO<br>     Recurrido<br><br>     V.<br><br>WILLIAM CINTRON ANTONSANTI<br><br>     Peticionario | Certiorari<br><br>99TSPR49 |

Número del Caso: CE-94-764

Abogados de la Parte Peticionaria: LCDO. ARTURO NEGRON GARCIA

LCDO. JULIO EDUARDO TORRES

Abogados de la Parte Recurrida: LCDA. BRENDA N. LEON SUAREZ
FISCAL ESPECIAL INDEPENDIENTE

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, San Juan

Juez del Tribunal de Primera Instancia: Hon. Germán Brau

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 4/9/1999

Materia:


Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                    CE-94-764        CERTIORARI

William Cintrón Antonsanti

    Acusado-peticionario

SENTENCIA

San Juan, Puerto Rico a 9 de abril de 1999

El Fiscal Especial Independiente, Lcdo. Federico Torres Jiménez (Q.E.P.D.), radicó ante la antigua Sala de San Juan del extinto Tribunal Superior de Puerto Rico un pliego acusatorio mediante el cual le imputó al peticionario William Cintrón Antonsanti una alegada violación al Artículo 242 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4438. En el referido pliego se le imputó a Cintrón Antonsanti haber presentado documentos falsos ante la Administración de Servicios Municipales. En varios de estos documentos aparecía la firma del peticionario Cintrón Antonsanti, el cual para esa fecha fungía como Alcalde del Municipio de Yauco. Dicha documentación tenía que ver con negocios llevados a cabo por el referido Municipio, en los cuales hubo desembolso de fondos públicos.

El día señalado para la vista del caso en su fondo, las partes sometieron ante el tribunal de instancia una "alegación preacordada". La misma consistió en la reducción del delito grave originalmente imputado a uno menos grave, esto es, una infracción al Artículo 214 del citado Código Penal, 33 L.P.R.A. sec. 4366, el cual castiga la "omisión en el cumplimiento del deber". La alegación preacordada sometida ante el foro de instancia contenía, además, una estipulación de las partes a los efectos de que "la sentencia que dispone adecuadamente del cargo" lo era una multa de $500.00, más la restitución de la suma de $2,500.00, por concepto de los gastos periciales incurridos por el Estado en la investigación y tramitación del caso.

Una vez notificado de la referida alegación preacordada, el magistrado que presidía los procedimientos entendió procedente reunirse "en cámara" con el representante del ministerio fiscal y el abogado defensor. Conforme el resumen que hace la representación legal del peticionario Cintrón Antonsanti --resumen que no controvierte el Procurador General-- en dicha reunión ocurrió lo siguiente:

> "Conforme nuestro recuerdo y notas, al entrar a cámara las partes inmediatamente presentaron al Hon. Juez Brau Ramírez el Escrito de Alegación Pre-Acordada. Este leyó el mismo y tan pronto terminó de leerlo preguntó al Fiscal Especial Independiente, Honorable Federico Torres Jiménez, si éste carecía de pruebas para probar las acusaciones. El fiscal Torres Jiménez respondió que parecía que los jueces de apelaciones tenían una opinión un tanto particular sobre lo que era una alegación preacordada. Indicó que los abogados de defensa actuarían irresponsablemente si conscientes de que el fiscal no tiene evidencia para probar su caso, aceptaran hacer alegación de culpabilidad por algún delito. Señaló que igualmente actuaría irresponsablemente el fiscal si radicara un cargo a sabiendas de que carece de prueba para sostenerlo. Señaló que las alegaciones pre-acordadas se logran porque a pesar de que prima facie el ministerio público tiene prueba para probar el caso, la debilidad de ésta y/o la prueba de la defensa podrían desvirtuar su prueba y lograr un veredicto absolutorio. Además, que ese hecho, unido a la evaluación de las circunstancias particulares del caso permiten y aconsejan la alegación preacordada. Afirmó que ese análisis lleva a la parte acusadora a concluir que se sirven mejor los intereses de la justicia llegando a una alegación pre-acordada por un delito menor y/o con determinada sentencia y particulares circunstancias más favorables al acusado que las del delito imputado. Así mismo al acusado le conviene hacer la alegación

pre-acordada para evitar el riesgo de una convicción por el delito imputado. Que en el caso de autos se conoce que la defensa tiene pruebas y/o argumentos con el propósito de desvirtuar aquellas que el ministerio público cuenta para probar el caso. Manifestó además el representante del ministerio público que en su opinión éste era un caso que había sido altamente exagerado por los medios de comunicación y otras personas.

Inmediatamente el juez le preguntó al fiscal, que si era así porqué razón no archivaba el caso. <u>Indicó el juez que accedería a una petición del F.E.I. para archivar el caso, pero no a una para rebajar los cargos a un delito menos grave</u>.

El fiscal contestó que técnicamente él entendía que tenía prueba para probar todos los elementos del delito, pero que no era este un caso del tipo que usualmente se imputa por infracción al Artículo 242 en los que existe un fraude, pues en este caso él no contaba con prueba de fraude. Inmediatamente el Juez manifestó que él entiende que este delito es del tipo de delito que va dirigido a acusar a aquellas personas que intentan ocultar actos de malversación de fondos. El fiscal indicó que no contaba con prueba alguna que tendiera a establecer que el acusado participó en cualquier forma en la malversación de fondos públicos. Que su prueba era en el sentido de que si bien había documentos antedatados y/o que no habían sido firmados por las personas cuyos nombres aparecían firmando los mismos, su prueba también establecía que todas las obras que habían sido contratadas habían sido realizadas conforme a lo pactado, y que carecía de prueba para establecer apropiación ilegal de cualquier suma de dinero.

<u>El juez insistió que si era así el fiscal debía solicitar el archivo de los casos, y que a tal cosa el accedería, más que no accedería a la aprobación del pre-acuerdo radicado</u>." (Enfasis suplido.)

Terminada la reunión "en cámara", y ya en corte abierta, sucedió, conforme así surge de la "minuta" que recoge lo acontecido en dicho día, lo siguiente:

"El Tribunal hace constar que había discutido en Cámara la propuesta que se sometió a su consideración para la clasificación del delito a uno menos grave con una sentencia de $500.00 de multa y le ha indicado a las partes que <u>no va a aceptar dicho acuerdo en el ejercicio de su discreción, tal como lo contempla la Regla 72, y se procederá con el juicio</u>." (Subrayado en el original.)

Inconforme, acudió William Cintrón Antonsanti ante este Tribunal imputándole al foro de instancia haber errado "...al rechazar de plano la alegación preacordada sometida".

Decidimos revisar. Estando en posición de resolver el recurso radicado, procedemos a así hacerlo.

I

Es harto conocido el principio de que nuestro ordenamiento jurídico "...encomienda al Poder Ejecutivo el deber de implantar las leyes penales..."; esto es, y dicho de manera sencilla, son "...los fiscales adscritos al Departamento de Justicia quienes tienen la función de procesar a todos los delincuentes por los crímenes y delitos de que pueda conocer bajo la autoridad y en representación del Estado Libre Asociado de Puerto Rico...", Pueblo v. Quiñones Román y Rivera Sierra, Opinión y Sentencia de fecha 17 de mayo de 1993. Véase, en adición: Pueblo v. González Malavé, 116 D.P.R. 578, 583 (1985); Pueblo v. Tribunal Superior, 94 D.P.R. 59, 65 (1967).

Ello significa, entre otras cosas, que el poder judicial no tiene inherencia alguna en la decisión original que hace el poder ejecutivo sobre si procede, o no, acusar a determinada persona en relación con hechos posiblemente delictivos. Esto es, la determinación inicial sobre si se radican, o no, cargos criminales contra una persona es una exclusiva del poder ejecutivo de nuestro Gobierno.

Otra es la situación, naturalmente, en la etapa posterior a la radicación de la denuncia o acusación ante el foro judicial. En relación con esta etapa, el poder judicial es el que determina no sólo la culpabilidad o inocencia del acusado sino que, de ordinario, el delito por el cual el imputado debe resultar convicto, si alguno.

La situación que contempla la Regla 72 de las Reglas de Procedimiento Criminal es una "híbrida" o intermedia. Se entendió que, radicado un pliego acusatorio ante el tribunal de primera instancia por determinado delito, resultaba conveniente a una sana administración de la justicia el que las partes pudieran acordar un curso de acción, o

resultado, que, <u>bajo ciertas circunstancias</u>, el foro judicial está "obligado" a seguir.[1]

Debe quedar claro que el tribunal de instancia <u>siempre</u> mantiene el poder de rechazar la alegación preacordada por las partes. <u>La facultad de no aceptar dicha alegación preacordada, sin embargo, no es, ni puede nunca ser, irrestricta</u>; esto es, <u>no</u> puede el tribunal incurrir, al respecto, en un "abuso de discreción". <u>Dicho de otra forma</u>, la decisión del juez de instancia denegando la alegación preacordada a la que han llegado las partes <u>tiene que ser una fundada y razonable, viniendo obligado, inclusive, el juez de instancia a vertir para récord los fundamentos en apoyo de su denegatoria</u>; ello, con el <u>obvio fin o propósito</u> de que el tribunal apelativo pueda en su día aquilatar, de manera informada, su decisión denegatoria.

Las disposiciones del <u>Inciso 7</u> de la Citada Regla 72 establecen, por decirlo así, los <u>parámetros</u> que regulan la actuación del tribunal de instancia en la referida situación. Conforme el mencionado Inciso 7:

> "(7) Al <u>decidir</u> sobre la aceptación de una alegación preacordada el tribunal <u>deberá cerciorarse</u> de que ha sido hecha con pleno conocimiento, conformidad y voluntariedad del imputado, <u>que es conveniente a una sana administración de justicia, y que ha sido lograda conforme a derecho y a la ética</u>. A este fin, el tribunal podrá requerir del fiscal y del abogado del imputado <u>aquella información, datos y documentos que tengan en su poder y que estime necesarios, y podrá examinar al imputado y a cualquier otra persona que a su juicio sea conveniente</u>". (Enfasis suplido.)

Como podemos notar, el tribunal de instancia viene obligado, en <u>primer</u> lugar, a cerciorarse de que la decisión del imputado, respecto a la alegación preacordada, es una informada y voluntaria. Ello, naturalmente, se logra examinando al imputado de delito sobre dichos aspectos. En <u>segundo</u> lugar, el tribunal tiene que cerciorarse que la

---

[1] **Sobre la "naturaleza contractual" de una alegación preacordada, una vez aceptada por el tribunal de instancia, véase: <u>Pueblo</u> v. <u>Figueroa García</u>, 129 D.P.R. 798 (1992).**

alegación preacordada "...es conveniente a una sana administración de la justicia, y que ha sido lograda conforme a derecho y a la ética". Hemos resuelto, por último, que el foro de instancia debe cerciorarse de que existe base suficiente en los hechos para sostener que el acusado sería culpable del delito por el cual hizo alegación de culpabilidad si tales hechos se probaran más allá de duda razonable en un juicio plenario. Pueblo v. Santiago Agricourt, Opinión y Sentencia de 8 de diciembre de 1998.

La propia Regla 72 le provee al tribunal de instancia los mecanismos necesarios para poder llegar a dicha determinación. Como vemos, faculta al tribunal de instancia para requerir de las partes la información o documentación que, a esos efectos, entienda necesaria, lo cual le permitirá estar en posición óptima para poder pasar juicio sobre la referida alegación.

II

En el presente caso, el juez de instancia no hizo nada de lo anteriormente señalado. El abuso de discreción en que incurrió es claro y evidente.

Debe recordarse que el fiscal especial independiente le informó al magistrado que entendía que no contaba con prueba suficiente para sostener el cargo originalmente imputado en el pliego acusatorio radicado y que, por el contrario, tenía prueba suficiente en derecho para sostener una convicción por un delito menor incluido. A esos fines, le ofreció a dicho magistrado las declaraciones juradas de los testigos de cargo; dicho ofrecimiento tenía el claro y evidente propósito de que el magistrado pudiera cerciorarse de la propiedad y corrección de la actuación del Estado.

El juez en cuestión, en lugar de examinar las declaraciones juradas que se le ofrecían --esto es, en lugar de cumplir con la obligación

que le impone la citada Regla 72-- no sólo rechazó dicho ofrecimiento sino que expresó que, antes de así hacerlo, prefería archivar totalmente los cargos radicados. A nuestro humilde entender, dicha actuación no sólo constituye un abuso de discreción sino que un acto erróneo e impermisible en derecho.

La prueba más evidente de ello la constituye el hecho de que el referido magistrado no virtió para récord un sólo fundamento en apoyo de su acción negándose a aceptar la alegación preacordada a la que las partes habían llegado.

### III

Deben mantenerse presente las expresiones de este Tribunal, en Pueblo v. Ortega Santiago, ante, a los efectos de que:

> "Discreción, naturalmente, significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. En el ámbito judicial, sin embargo, el mencionado concepto "....*no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho,....*". Pueblo v. Sánchez González, 90 D.P.R. 197, 200 (1964).

> No resulta fácil precisar cuándo un tribunal de justicia incurre en un abuso de discreción. No tenemos duda, sin embargo, de que el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad. Como expresáramos en Sánchez González, ante, discreción "....*es, pues, una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera....*". (Enfasis en el original.)

Un análisis sosegado de la situación nos convence de que en el presente caso el juez de instancia incurrió en claro abuso de discreción al negarse a aceptar la alegación preacordada que le sometieron las partes, razón por la cual se dicta Sentencia revocatoria de la resolución recurrida y se devuelve el caso al foro de instancia para procedimientos ulteriores consistentes con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre en el resultado con opinión escrita. Los Jueces Asociados señora Naveira de

Rodón y señor Corrada del Río disienten sin opinión escrita. El Juez Asociado señor Negrón García inhibido.


                              Isabel Llompart Zeno
                         Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

EL PUEBLO DE PUERTO RICO

    Demandante-Recurrido

       vs.                    CE-94-764        CERTIORARI

WILLIAM CINTRON ANTONSANTI

    Demandado-Recurrente

Opinión Concurrente emitida por el Juez Asociado Señor FUSTER BERLINGERI

En San Juan, Puerto Rico, a 9 de abril de 1999.

En este caso, el juez de instancia se negó a aceptar una alegación preacordada, mediante la cual el acusado aceptaba declararse culpable de un delito de grado inferior al del que se le había imputado. La alegación preacordada tenía la aprobación del Fiscal Especial Independiente, quien representa al pueblo de Puerto Rico en estos procedimientos. Por conducto de su representación legal, también tenía la aprobación del querellante, quien inicialmente presentó cargos contra el acusado ante la Comisión para Ventilar Querellas Municipales.

En la reunión sostenida en cámara por el juez de instancia con los fiscales y los abogados de la defensa en relación a la referida alegación preacordada, salió

a relucir que el Fiscal Especial Independiente tenía

serias reservas en cuanto a si el

pueblo podía prevalecer  en el juicio, respecto a la particular acusación que obraba contra el peticionario.  Ello dio lugar a que el juez propusiese que el Fiscal <u>retirase la acusación y solicitase archivar el caso</u>, indicando que él accedería a tal curso de acción.  Entonces, ante la negativa del Fiscal a lo propuesto por el juez, <u>éste le sugirió a la defensa que viese el caso por tribunal de derecho</u>, con lo que se verificaría la aducida falta de prueba convincente para establecer el delito imputado.  Este otro curso de acción no fue acogido por la defensa.  En vista de lo anterior, el juez no aprobó la alegación preacordada, y señaló fecha para comenzar el juicio.

A la luz de todo lo anterior, estimo que lo procedente judicialmente era aceptar la alegación preacordada en cuestión.  Considerados los criterios afines de los distintos abogados involucrados en el caso, y particularmente en vista de la posición del Fiscal, <u>me parece altamente improbable que, en un juicio imparcial, el acusado pueda ser encontrado culpable del delito imputado</u>.  En esas circunstancias, los fines de la justicia se sirven aceptando la alegación preacordada, por lo que concurro con el resultado al que llega la mayoría en su sentencia en el caso de autos.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO