El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
La Regla 192.1 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, permite que un acusado ataque la validez de la sentencia en su contra si puede demostrar que se le violaron sus derechos. En este caso, el Tribunal de Primera Instancia emitió dos dictámenes contradictorios sobre un mismo acuerdo de alegación de culpabilidad lo que hizo imposible que se cumpla con parte del acuerdo. Por eso resolvemos que el acusado tiene derecho a rechazar el acuerdo y reclamar según la Regla 192.1, supra, que se deje sin efecto la sentencia condenatoria y se le juzgue en los méritos.
*950 I
El Sr. Jorge L. Pérez Adorno fue acusado de cometer varios delitos en el Tribunal de Primera Instancia, Sala de Bayamón. El 27 de diciembre de 2001, el Ministerio Pú-blico presentó denuncias por los delitos de: robo, conspira-ción, agresión agravada grave, apropiación ilegal agra-vada, uso de disfraz y amenaza, según el Código Penal de 1974 (33 L.P.R.A sec. 3001 et seq.). Además, se presentaron denuncias por varios artículos de la Ley de Armas de Puerto Rico, Ley Núm. 17 de 19 de enero de 1951 (25 L.P.R.A. secs. 455 et seq.), para un total de treinta cargos. El 9 de enero de 2002, Pérez Adorno renunció por escrito a la vista preliminar y el Ministerio Público presentó las acusaciones correspondientes.
Mientras se procesaba al acusado, Pérez Adorno, en la Sala 605 del tribunal, el Ministerio Público presentó otras denuncias en las que se le imputaron los delitos de robo, conspiración, secuestro, daños e infracciones a la Ley de Armas de Puerto Rico. El 29 de octubre de 2002 se deter-minó causa probable para el arresto y se señaló la vista preliminar para el 5 de noviembre de 2002. Ante la incom-parecencia de Pérez Adorno a la vista preliminar, se deter-minó causa probable para acusar.
Luego de estos incidentes, el 14 de noviembre de 2002 el acusado, Pérez Adorno, y el Ministerio Público suscribieron un “Convenio de alegación preacordada”. Este acuerdo dis-puso:
Comparecen de una parte el Departamento de Justicia de Puerto Rico, representado por el FISCAL JESÚS PELUYERA SANTIAGO y de otra parte JORGE L. PÉREZ ADORNO, con-sienten al [sic] siguiente:
1. Que el Sr. JORGE L. PÉREZ ADORNO hará alegación de culpabilidad por el delito de Robo en todos los casos que tiene pendiente en la Sala 605 para una pena de diez años por los hechos ocurridos en Vega Alta, P.R., el 24 y 30 de octubre y el 24 de noviembre [de 2001] y otros casos de Robo pendientes que totalizan diez cargos de Robos, catorce de *951 Ley de Armas, una Conspiración, una Agresión Agravada Grave, una Apropiación Ilegal Agravada, Uso de disfraz y amenaza. ... Además hará alegación [de culpabilidad] en los siguientes casos de Robo [ocurridos] que están pendientes en el Tribunal. Relacionados con hechos ocurridos, el 24 de sep-tiembre de 2001; el 12 de octubre de 2001; 22 de octubre de 2001; 28 de octubre de 2001; el 12 de noviembre de 2001, y el 15 de noviembre de 2001 .... (Énfasis suplido.) Apéndice, pág. 69.
Conforme con lo anterior, Pérez Adorno acordó hacer una sola alegación de culpabilidad por todos los delitos pre-sentados en su contra en el Tribunal de Primera Instancia, Sala de Bayamón, a saber: (1) los delitos presentados ante la Sala 605 y (2) los casos de robo “pendientes en el Tribunal. Relacionados con hechos ocurridos, el 24 de sep-tiembre de 2001, el 12 de octubre de 2001, el 22 de octubre de 2001, el 28 de octubre de 2001, el 12 de noviembre de 2001 y el 15 de noviembre de 2001”. Apéndice, pág. 69. Como parte de ese convenio, Pérez Adorno se comprometió a poner a disposición del Ministerio Público cualquier evi-dencia documental e información que le fuera requerida sobre las investigaciones criminales que se estaban reali-zando en otros casos. Además, Pérez Adorno se comprome-tió a declarar como testigo en el foro local o federal, tanto en el ámbito criminal, civil o administrativo, sobre tales investigaciones. A cambio de su testimonio y su alegación de culpabilidad, las partes acordaron establecer una pena máxima de diez años de cárcel, concurrente entre sí en todos los cargos, en los cuales Pérez Adorno se declararía culpable.
Ese mismo día se presentó el acuerdo en la Sala 605. El juez a cargo de esa sala, Hon. Edwin Ruiz González, aprobó el acuerdo y aceptó la alegación de culpabilidad del acusado en los casos ante su consideración. Es decir, el tribunal aceptó el acuerdo parcialmente y pospuso el dic-tamen de la sentencia, ya que el acusado había renunciado a los términos de juicio rápido.
Luego de esto, el 27 de diciembre de 2002, el Ministerio *952 Público presentó las acusaciones por los otros delitos in-cluidos en el acuerdo, esta vez ante una sala distinta del mismo tribunal, la Sala 602.(1) En la referida Sala 602, la representación legal del acusado no era la misma que la encargada de su defensa en la Sala 605.
Según surge del expediente, luego de varios incidentes procesales se llamó el caso para juicio en la Sala 602. El acusado no compareció a esa vista. La representación legal del recurrido le informó al juez de la Sala 602 sobre el convenio de alegación preacordada suscrito con el Ministe-rio Público y el juez de esta sala lo examinó. Ante la incom-parecencia del acusado a la vista, el tribunal pospuso el acto de alegación y le advirtió al Ministerio Público que no aceptaba el acuerdo, porque la pena acordada era contraria a derecho.
El 18 de septiembre de 2003 se llamó el caso para juicio, pero nuevamente el acusado no compareció. El juez de esa sala señaló, nuevamente, que no se aceptó el acuerdo, por-que era contrario a derecho. Acto seguido, la representa-ción del acusado solicitó que se pospusiera el acto de ale-gación y el Ministerio Público señaló que se “oponía a que se le tomara la alegación de culpabilidad”. Apéndice, págs. 123-124. En esta vista, la representación del acusado soli-citó la desestimación de los casos al amparo de la Regla 64(n) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. El juez de esa sala desestimó los casos presentados. El Minis-terio Público recurrió entonces de esa determinación ante el Tribunal de Apelaciones. Este último revocó la determi-nación del Tribunal de Primera Instancia y devolvió el caso para la continuación de los procedimientos. Una vez de-vuelto el caso, el juez de la Sala 602 declaró el sobresei- *953 miento de los casos mediante la Regla 247(b) de Procedi-miento Criminal, 34 L.P.R.A. Ap. II, el 20 de enero de 2005.
Mientras la revisión sobre la desestimación de los casos presentados en la Sala 602 se revisaba en el Tribunal de Apelaciones, el juez de la Sala 605 procedió a dictar sen-tencia el 20 de mayo de 2004, conforme con la resolución de 14 de noviembre de 2002. El acusado no compareció y el juez procedió a dictar sentencia de una pena máxima de diez años de cárcel, concurrente entre sí en todos los cargos presentados en esa sala en los cuales el acusado se declaró culpable.
Ante esta situación, la defensa presentó en la Sala 602 una moción en la que alegó la ilegalidad de la sentencia y solicitó que se dejara sin efecto la alegación, ya que el acuerdo de alegación de culpabilidad se dejó sin efecto una vez el Ministerio Público alegadamente “retiró” el convenio en la Sala 602. El Ministerio Público se opuso y alegó que la sentencia fue dictada conforme a derecho, porque el acuerdo se “retiró” en la Sala 602 y no en la sala donde se dictó la sentencia contra el acusado. El juez de la Sala 605 denegó de plano la moción presentada y el acusado recu-rrió ante el Tribunal de Apelaciones. Ese foro revocó la determinación del Tribunal de Primera Instancia y ordenó la celebración de una vista a los efectos de determinar si procedía el relevo de la sentencia al amparo de la Regla 192.1 de Procedimiento Criminal, supra.
El juez de la Sala 605 celebró la vista correspondiente y, según la prueba desfilada, determinó que el acusado fue quien “rompió el acuerdo” entre la fiscalía y la defensa. El juez determinó que, en uno de los casos donde el acusado se comprometió a ser testigo del Pueblo, el acusado indicó que “no iba a venir al juicio”, y ello ocasionó que se deses-timaran los cargos, por incomparecencia de la prueba de cargo. Por lo anterior, el juez denegó la solicitud del acu-sado al amparo de la Regla 192.1, supra. Sin embargo, el juez no evaluó el rechazo del acuerdo por parte del juez de *954 la Sala 602. Este rechazo ocurrió antes de que el Ministerio Público alegadamente “retirara” el acuerdo presentado por las partes.
Inconforme, el acusado presentó un recurso de certiorari ante el Tribunal de Apelaciones, en el que señaló que pro-cedía el relevo de la sentencia dictada en su contra toda vez que la alegación de culpabilidad que dio base a la sen-tencia fue producto de un acuerdo que se dejó sin efecto. Señaló que el Ministerio Público “retiró” la oferta el 18 de septiembre de 2003 en la Sala 602. Además, señaló que erró el Tribunal de Primera Instancia en la apreciación de la prueba al determinar que el acusado incumplió el acuerdo. El Ministerio Público no compareció. Eventual-mente, el Tribunal de Apelaciones revocó al Tribunal de Primera Instancia y determinó que, como el Ministerio Pú-blico retiró el acuerdo, éste quedó sin efecto y el tribunal no podía dictar sentencia a base de la alegación de culpabilidad. Se dejó sin efecto la sentencia dictada y la alegación de culpabilidad, y se ordenó que se juzgara al acusado en los méritos por los delitos, según fueron presen-tados por el Ministerio Público. En ningún momento, el Tribunal de Apelaciones evaluó el rechazo del acuerdo por parte del juez de la Sala 602.
Ante esta situación, el Ministerio Público acudió ante nos mediante un recurso de certiorari, en el que señaló que erró el Tribunal de Apelaciones al dejar sin efecto una sen-tencia válidamente dictada. Añadió que el retiro de la oferta se llevó a cabo en la Sala 602 y no en la Sala 605, donde se dictó la sentencia, por lo que no hubo en esa sala un retiro del acuerdo aceptado. Argüyó, además, que como cuestión de derecho el Ministerio Público no podía retirar su oferta, porque ya había sido aceptada por el tribunal en otra sala, la 602. Por su parte, el recurrido Pérez Adorno señaló que el Tribunal de Apelaciones actuó conforme a derecho, ya que el retiro de la oferta dejó sin efecto el acuerdo y, por lo tanto, la alegación de culpabilidad se hizo a base de un acuerdo ineficaz.
*955 II
En este caso, el acusado y recurrido Pérez Adorno pre-sentó mía moción —que se acogió como una solicitud al amparo de la Regla 192.1, supra— en la que señaló que la sentencia era ilegal, porque el acuerdo de alegación de cul-pabilidad se dejó sin efecto en una sala distinta a aquélla donde se dictó la sentencia. Según el acusado, la razón por la que el acuerdo de alegación es ineficaz es que el Minis-terio Público, alegadamente, “retiró” el acuerdo en la Sala 602, después de que había sido aceptado por el juez de la Sala 605. Sin embargo, conforme surge del expediente ante nuestra consideración, el juez de la Sala 602 rechazó el acuerdo de alegación de culpabilidad, antes de que el Mi-nisterio Público lo “retirara”. En ese sentido, no cabe ha-blar del “retiro” por parte del Ministerio Público, ya que el acuerdo de alegación de culpabilidad fue rechazado por el juez de la Sala 602. El Ministerio Público no podía retirar un acuerdo rechazado.
A la luz de estos hechos, lo que procede evaluar es si, en efecto, la sentencia se dictó a base de un acuerdo ineficaz debido a las actuaciones contradictorias emitidas sobre un mismo acuerdo de alegación de culpabilidad por parte de dos jueces distintos en el Tribunal de Primera Instancia, Sala de Bayamón. Si la respuesta a lo anterior es en la afirmativa, hay que evaluar si procede un remedio al am-paro de la Regla 192.1 de Procedimiento Criminal, supra.
La figura jurídica de la alegación preacordada o plea bargaining se originó en Inglaterra a partir del siglo XV. 5 LaFave, Israel and King, Criminal Procedure 2d págs. 6- 7 (1999). Véase, además, North Carolina v. Alford, 400 U.S. 25 (1970). Sin embargo, no es hasta mediados del siglo XX que comienza a institucionalizarse como práctica usual en la disposición de los casos. LaFave, Israel and King, supra. Una de las razones principales para adoptar esta figura *956 jurídica fue la conveniencia administrativa que represen-taba poder utilizar un sistema donde se dispusiera de los casos criminales, sin la celebración de un juicio plenario. íd., pág. 9, citando a “A. Enker, Perspectives on Plea Bargaining, in President’s Comm’n on Law Enforcement and Administration of Justice, Task Force Report: The Courts 108, 112 (1967)”: “[T]he most commonly asserted justification of plea bargaining is its utility in disposing of large numbers of cases in a quick and simple way.” (Enfasis suplido.)
Esta conveniencia administrativa, entre otras ventajas, llevó al Tribunal Supremo federal a aceptar el sistema de alegaciones preacordadas, ya que sin ellas sería muy difí-cil, si no imposible, enjuiciar a todos los acusados en los términos dictados por el ordenamiento procesal y la Constitución. Véanse: Santobello v. New York, 404 U.S. 257 (1971); Pueblo v. Figueroa García, 129 D.P.R. 798 (1992). Como dijo el Tribunal Supremo federal en Blackledge v. Allison, 431 U.S. 63, 71 (1977):
Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargaining are important components of this country’s criminal justice system. Properly administered, they can benefit all concerned. (Énfasis suplido.)
Como consecuencia de este aval judicial al mecanismo de la alegación preacordada, en 1974 el Congreso enmendó la Regla 11 de Procedimiento Criminal federal, 18 U.S.C. R. 11, para regular el procedimiento que se ha de seguir al realizar los llamados plea bargains.
En Puerto Rico, en Pueblo v. Mojica Cruz, 115 D.P.R. 569 (1984), reconocimos la validez constitucional del meca-nismo de las alegaciones preacordadas, así como de la uti-lidad que ello representa para la disposición de los casos penales. Véase, además, Pueblo v. Suárez, 163 D.P.R. 460 (2004). Luego de este aval judicial local, la Asamblea Le-gislativa aprobó la Regla 72 de Procedimiento Criminal, 34 *957 L.P.R.A. Ap. II, para codificar los requisitos que se tienen que cumplir al realizar la alegación preacordada, de ma-nera que ésta pueda dar base a una sentencia condenatoria.
Entre otras cosas, para que este acuerdo tenga un efecto jurídico, es necesario que tenga la aceptación del tribunal. La función del juez está detallada en el inciso (7) de la Regla 72, supra. Este inciso establece que, cuando se presenta el acuerdo ante el tribunal, el juez tiene que ponderar si acepta o rechaza la alegación de culpabilidad mediante una evaluación de si: (1) la alegación fue hecha con pleno conocimiento, conformidad y voluntariedad del imputado; (2) ésta es conveniente a una sana administración de la justicia, y (3) se logró conforme a derecho y a la ética. Si el acuerdo no satisface estos requisitos, entonces el juez tiene que rechazarlo. Además, el juez deberá cerciorarse de que existe una base suficiente en los hechos para sostener que el acusado resultaría culpable más allá de duda razonable en caso de llevarse a cabo un juicio. Pueblo v. Santiago Agricourt, 147 D.P.R. 179 (1998). Véase, además, Pueblo v. Cintrón Antonsanti, 148 D.P.R. 39 (1999).
En reiteradas ocasiones hemos enfatizado que una vez el tribunal acepta el acuerdo, éste queda “consumado”. Pueblo v. Santiago Agricourt, supra, pág. 194. Es por esta razón que, antes de que el tribunal haya aceptado el acuerdo, cualquiera de las partes puede retirar su oferta. Precisamente, en Pueblo v. Figueroa García, supra, resolvimos que, cuando el tribunal acepta el acuerdo y el acusado hace la correspondiente alegación de culpabilidad, las partes no pueden retirar lo acordado, por lo que cualquier intento a tales efectos es un incumplimiento del acuerdo. Véase, además, E.L. Chiesa Aponte, Derecho procesal Penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1993, Vol. III, págs. 294-295.
En Pueblo v. Figueroa García, supra, estableci- *958 mos la diferencia entre un acuerdo refrendado por el tribunal y uno que no goza de esta aceptación. Cuando el acuerdo es aceptado por el tribunal y el acusado hace ale-gación de culpabilidad, las partes están vinculadas por lo pactado. Esto responde a que con la aceptación del acuerdo y la alegación de culpabilidad, el acusado renuncia a dere-chos constitucionales valiosos como es el derecho a que se pruebe su culpabilidad más allá de duda razonable y a un juicio en su fondo, entre otros. Véase Pueblo v. Figueroa García, supra, pág. 807. Por lo tanto, una vez el tribunal acepta el acuerdo y el acusado hace la alegación de culpa-bilidad, quedan implicados los derechos constitucionales del acusado. A tales efectos, el Tribunal Supremo federal dijo en Mabry v. Johnson, 467 U.S. 504, 507-508 (1984):
A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is^ the ensuing guilty plea that implicates the constitution. (Enfasis suplido.)
En ese sentido, es posible colegir que, luego de la aceptación del tribunal y de la correspondiente alegación de culpabilidad, cualquier acto en detrimento del acuerdo no imputable al acusado, como podría ser que el Ministerio Público quisiera dejar sin efecto lo acordado, afecta los derechos constitucionales del acusado. Véase Pueblo v. Figueroa García, supra, pág. 808.
Como señaló el Tribunal Supremo federal en Santobello v. New York, supra, cuando hay un incumplimiento del acuerdo por parte del Ministerio Público, procede devolver el caso al tribunal sentenciador para que dé un remedio al acusado, ya sea que se le permita retirar la alegación de culpabilidad o se ordene el cumplimiento específico del acuerdo por parte del Ministerio Público. Al así decidir, el Tribunal Supremo federal señaló:
*959 This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. Santobello v. New York, supra, pág. 499.
Así también, en Puckett v. United States, 129 S. Ct. 1423, 1430, el Tribunal Supremo federal señaló:
When a defendant agrees to a plea bargain, the Government takes on certain obligations. If those obligations are not met, the defendant is entitled to seek a remedy, which might in some cases be rescission of the agreement, allowing him to take back the consideration he has furnished, i.e., to withdraw his plea. But rescission is not the only possible remedy; in Santobello we allowed for resentencing at which the Government would fully comply with the agreement-in effect, specific performance of the contract .... In any case, it is entirely clear that a breach does not cause the guilty plea, when entered, to have been unknowing or involuntary. It is precisely because the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain. http://www.supremecourt.gov/opinions/08pdfi07-9712.pdf
Ahora bien, la normativa expuesta discute el efecto ju-rídico del acuerdo incumplido por parte del Ministerio Público. A modo ilustrativo, es meritorio señalar que los tribunales federales se han enfrentado a controversias donde el juez que acepta el acuerdo, luego se niega a darle cumplimiento o lo rechaza. Véanse: U.S. v. Ritsema, 89 F.3d 392 (7mo Cir. 1996); United States v. Blackwell, 694 F.2d 1325 (C.D. A.C. 1982). Al interpretar la Regla 11 de Procedimiento Criminal federal, supra, en United States v. Blackwell, supra, pág. 1338, el tribunal intermedio federal señaló:
... [A]s pointed out in Santobello, 404 U.S. at 262, 92 S. Ct. at 499, there is no absolute right to have a guilty plea accepted, and [a] court may reject a plea in exercise of sound judicial *960 discretion, once a judge has accepted a plea and bound the defendant to it, she cannot, except possibly for fraud, refuse to carry through on the bargain.
Añadió el tribunal:
Pleas that bind only the defendant, or even the prosecutor and the defendant, but not the judge, would be unfair to the defendant and would dilute the incentive for defendant’s to plead at all. ... The judge’s faithful observance of the requirements of Rule 11 is just as vital to the fairness and efficiency of the process as the prosecutor’s compliance. She has a primary duty under that rule to insure not only that the terms of the bargain are understood by the defendant but that they are adhered to both sides, as well as by the court itself. (Enfasis suplido.) Íd., pág. 1339.
Una vez el acusado hace la correspondiente alegación de culpabilidad y el tribunal la acepta, posteriormente el juez no puede rechazar el acuerdo. Como discutimos, el fundamento para no avalar el incumplimiento del Ministerio Público con los términos del acuerdo aceptado por el tribunal es el menoscabo de los derechos constitucionales del acusado, quien renuncia a éstos con el entendido de que se cumplirá lo convenido. El mismo razonamiento debe seguirse en los casos donde es el tribunal quien provoca el incumplimiento de lo pactado.
Ahora bien, ¿qué ocurre cuando, como sucedió en este caso, un juez acepta el acuerdo y luego otro juez lo rechaza? Conforme a lo discutido, concluimos que el efecto es el mismo. Una vez el tribunal acepta el acuerdo y el acusado hace la correspondiente alegación de culpabilidad, quedan implicados los derechos constitucionales del acusado, quien tiene el derecho a que lo acordado y aceptado se cumpla en su totalidad. Por lo tanto, una vez el acusado hace la alegación de culpabilidad y el tribunal, como institución, acepta el acuerdo, el juez no puede rechazarlo posteriormente. Lo contario sería permitir que después de que el acusado hace alegación de culpabilidad por confiar *961 en el acuerdo aceptado, el tribunal revierta su determina-ción y sentencie al acusado sin considerar lo acordado. Esto, sin duda, menoscabaría los derechos del acusado. Además le restaría efectividad a las alegaciones preacorda-das, por temor a que los acuerdos, una vez aceptados, pue-dan ser rechazados por el tribunal. Esto sin duda vulnera-ría el propósito para el que se adoptó este tipo de mecanismo procesal: la conveniencia administrativa que representa la solución rápida de casos, sin los costos que conllevan los juicios plenarios.
Conforme con esta normativa, procedemos a evaluar la primera interrogante, a saber, si las actuaciones contradic-torias por parte de los jueces del Tribunal de Primera Ins-tancia, Sala de Bayamón, dejaron sin efecto y, como conse-cuencia, imposibilitaron el cumplimiento del convenio de alegación preacordada suscrito por el Ministerio Público y el recurrido, Pérez Adorno.
III
La Regla 72 de Procedimiento Criminal, supra, establece que el acuerdo suscrito entre el acusado y el Ministerio Público tendrá que ser aprobado por el tribunal. En este caso hubo dos actuaciones contradictorias sobre un mismo acuerdo por parte de dos jueces del Tribunal de Primera Instancia, a saber, la aprobación del acuerdo en la Sala 605 y su rechazo en la Sala 602. Para este análisis es meritorio adentrarnos en la discusión sobre lo acordado en el convenio de la alegación preacordada que dio lugar a esta controversia.
Según mencionamos, el acuerdo establecía que el acu-sado y recurrido, Pérez Adorno, haría una alegación de cul-pabilidad por todos los delitos presentados en su contra en el Tribunal de Primera Instancia, Sala de Bayamón, a saber: (1) los delitos presentados ante la Sala 605 y (2) los casos de robo “pendientes en el tribunal relacionados con *962 hechos ocurridos el 24 de septiembre de 2001, el 12 de oc-tubre de 2001, el 22 de octubre de 2001, el 28 de octubre de 2001, el 12 de noviembre de 2001 y el 15 de noviembre de 2001” para una pena de diez años, concurrente en todos los casos incluidos en el acuerdo.(2) Apéndice, pág. 69. En ese sentido, cuando el acusado hizo alegación de culpabilidad preacordada ante la Sala 605 y el tribunal aceptó el acuerdo, el recurrido Pérez Adorno abdicó sus derechos constitucionales y estatutarios entre los que se encuen-tran, el derecho a que se establezca su culpabilidad más allá de duda razonable, el derecho a un juicio justo, el de-recho a ser juzgado, a presentar evidencia y a rebatir la prueba presentada en su contra. En ese momento quedó “consumado” el acuerdo. Cuando el acusado renunció a sus derechos lo hizo con el entendido de que se cumpliría con los términos del acuerdo suscrito por las partes; esto es, que se le condenaría a una pena de reclusión de diez años concurrentes por todos los delitos presentados en su contra en el Tribunal de Primera Instancia, Sala de Bayamón. Esta es la causa que dio lugar al convenio de alegación preacordada. El acusado no renunció a sus derechos a cam-bio de que se le condenara a una pena de diez años concu-rrentes solamente en los casos presentados en la Sala 605.
Conforme a lo anterior, cuando el juez de la Sala 602 rechazó el acuerdo de alegación de culpabilidad provocó la *963 imposibilidad del cumplimiento del acuerdo en su totalidad y que el acusado pudiera recibir el beneficio que lo llevó a negociar con el Ministerio Público; esto es la pena acor-dada de diez años concurrentes por todos los delitos pre-sentados en el Tribunal de Primera Instancia. En ese sen-tido, este rechazo provocó el incumplimiento del acuerdo, ya que el Ministerio Público no iba a poder honrar su parte. Al respecto, nada importa que se tratara de jueces diferentes. Recordemos que el Tribunal de Primera Instan-cia es una sola institución. Por eso concluimos que un mismo tribunal tomó actuaciones contradictorias que deja-ron sin efecto el acuerdo de alegación que suscribió el acu-sado, a base del cual éste hizo la alegación de culpabilidad.
Cuando un acuerdo incluye casos que no están ante un solo juez, existe el riesgo de que un juez rechace el mismo acuerdo que otro juez aprobó. También puede que el acu-sado o el Ministerio Público decidan no sostener sus res-pectivas ofertas en todas las salas en que se presente el acuerdo. Esto tiene el efecto de: (1) crear dictámenes con-tradictorios por parte de un mismo tribunal, y (2) que el acuerdo aprobado pueda ser atacado en múltiples instan-cias por las partes que lo suscribieron. En ese sentido, este tipo de acuerdo no promueve la sana administración de la justicia que exige la Regla 72, supra. Cabe señalar que para evitar situaciones como la de autos, al evaluar el acuerdo de alegación de culpabilidad que se le presenta, el juez debe sopesar si el acuerdo conviene a la sana adminis-tración de la justicia, según lo exige la propia regla.
Así, pues, cuando se presenta ante el tribunal un acuerdo de alegación que incluye casos que no están presentados en una misma sala, o en un mismo tribunal, el juez debe indicar a las partes que la aprobación del acuerdo está sujeta a que se realice cualquiera de las alternativas siguientes: (1) que se consoliden los casos si son consolidables; (2) que se trasladen a esa sala los casos pendientes incluidos en el acuerdo, incluyendo los casos pre- *964 sentados en otras salas del Tribunal de Primera Instancia, si el acusado consiente a ello, o (3) que el acusado con-sienta a hacer una alegación de culpabilidad, a sabiendas de que la vigencia del acuerdo en los demás casos está sujeta a que tiene que ser presentado y aceptado en cada una de las salas donde esos casos están pendientes.
De no lograrse lo anterior, el juez deberá rechazar el acuerdo a base de que no se puede determinar si éste es conforme a derecho ni promueve una sana administración de la justicia. De esta forma se evita que en casos futuros se violen los derechos constitucionales del acusado cuando se utilicen acuerdos como el de autos y, por lo tanto, se evita que se pueda atacar la sentencia por el fundamento de que hay dictámenes contradictorios sobre un mismo acuerdo, o que el acuerdo se dejó sin efecto, ya sea por el acusado o por el Ministerio Público en otra sala.
IV
A. Una vez resuelto que el rechazo en la Sala 602 dejó sin efecto el acuerdo de alegación de culpabilidad, nos co-rresponde determinar si procede el relevo de la sentencia al amparo de la Regla 192.1 de Procedimiento Criminal, supra.
Como norma general, una sentencia dictada en casos de convicción por alegación de culpabilidad sólo será revisada mediante la interposición de un recurso de certiorari. Regla 193 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. “Sin embargo, el hecho de que un acusado haya sido convicto mediante una alegación de culpabilidad no impide un ataque directo a la validez de la alegación o colateral de la sentencia de convicción dictada como resultado de la alegación de culpabilidad”. Pueblo v. Santiago Agricourt, supra, págs. 210-211. Conforme con lo anterior, hemos resuelto que la sentencia puede estar sujeta a un *965 ataque colateral si la alegación de culpabilidad no fue efec-tuada inteligentemente. Íd.
Además, hemos resuelto que un ciudadano convicto mediante la alegación de culpabilidad puede atacar la validez de la sentencia condenatoria, al amparo de la Regla 192.1, supra, si cuenta con un planteamiento o una defensa meritoria al amparo del debido proceso de ley. Pueblo v. Montero Luciano, 169 D.P.R. 36 (2006). Esta regla autoriza a cualquier persona que se encuentre detenida por una sentencia condenatoria, a presentar una moción en la sede del Tribunal de Primera Instancia que la dictó, con el objetivo de que sea anulada, dejada sin efecto o corregida, en circunstancias en que se alegue el derecho a ser puesto en libertad por cualquiera de los fundamentos siguientes:
(1) La sentencia fue impuesta en violación de la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o la Cons-titución y las leyes de Estados Unidos; o
(2) el tribunal no tenía jurisdicción para imponer dicha sen-tencia; o
(3) la sentencia impuesta excede de la pena prescrita por la ley, o
(4) la sentencia está sujeta a ataque colateral por cualquier motivo .... Regla 192.1, supra.
La moción al amparo de esta regla, puede presentarse ante el tribunal sentenciador en cualquier momento, después de dictada la sentencia, incluso cuando ésta haya advenido final y firme. La regla requiere que se incluyan en la moción todos los fundamentos que tenga el peticionario para solicitar el remedio provisto en ella, por lo que se considerarán renunciados los fundamentos no incluidos en la moción, a menos que el tribunal, con base en un escrito subsiguiente, determine razonable que tales fundamentos no pudieron presentarse en la moción original. Según este mecanismo, la cuestión que ha de plantearse es si la sentencia impugnada está viciada por un error fundamental que contradice la noción más básica *966 y elemental de lo que constituye un procedimiento criminal justo.
Conforme a lo anterior, una moción al amparo de la Regla 192.1 de Procedimiento Criminal, supra procederá cuando, entre otras circunstancias, la sentencia esté sujeta a un ataque colateral por un fundamento válido. Esta regla se estableció para poner orden a la profusión indiscriminada de solicitudes de habeas corpus, en las que se cuestionaba colateralmente la validez de una sentencia condenatoria en una sala distinta a la que la había dictado. Véase Rabell v. Alcaides Cárceles de P.R., 104 D.P.R. 96 (1975). Con ese propósito, la Regla 192.1 de Procedimiento Criminal, supra, establece un recurso similar al que se autoriza mediante el recurso extraordinario de hábeas corpus, en el que se requiere que estos cuestionamientos colaterales se planteen en primera instancia ante la sala del tribunal que dictó la sentencia condenatoria.
Este recurso al amparo de la Regla 192.1, supra, sólo está disponible cuando la sentencia adolece de un defecto fundamental que conlleva inevitablemente una violación al debido proceso de ley. Por ello, salvo circunstancias excepcionales, no se concederá en sustitución del recurso ordinario de apeláción. Véanse: Otero Fernández v. Alguacil, 116 D.P.R. 733 (1985); D. Rivé Rivera, Recursos Ex-traordinarios, 2da ed., San Juan, Ed. U.I.A., 1996, págs. 181-184.
Como hemos enfatizado en ocasiones anteriores, no obstante la amplitud del lenguaje empleado por la Regla 192.1, supra, los fundamentos para revisar una sentencia mediante este mecanismo se limitan a cuestiones de derecho, por lo que el precepto no puede ser empleado para argumentar cuestiones de hechos que hubieren sido adjudicadas por el tribunal. Véase Pueblo v. Ruiz Torres, 127 D.P.R. 612 (1990). Se trata de un mecanismo para cuestionar la legalidad de la sentencia, no su corrección, a la luz *967 de los hechos. Pueblo v. Marcano Parrilla, 152 D.P.R. 557 (2000).
B. En este caso hubo dos dictámenes contradictorios por parte de un mismo tribunal sobre el convenio de la alega-ción preacordada. Estas actuaciones provocaron la imposi-bilidad del cumplimiento del convenio. En este caso, el acu-sado y recurrido Pérez Adorno hizo una alegación de culpabilidad según el entendido de que el acuerdo se cum-pliría en su totalidad, es decir que el acuerdo se “consumaría”. Como en este caso el acuerdo no puede ser cumplido, no es posible sostener la sentencia, ya que se dictó en detrimento de los derechos constitucionales del acusado. Las actuaciones contradictorias del Tribunal de Primera Instancia, Sala de Bayamón, no son cónsonas con el principio del debido proceso de ley que debe imperar en el procedimiento criminal que se instó contra el recurrido, Pérez Adorno. Además, en ningún momento surge del con-venio ni de la minuta del juez de la Sala 605, que se le informara al acusado que la aceptación del acuerdo se li-mitaba a los casos presentados en esa sala. Ante esta rea-lidad y el posterior rechazo del acuerdo, resolvemos que la sentencia dictada a base de la alegación preacordada no puede sostenerse.
Según la norma de Santobello v. New York, supra, reiterada en Puckett v. United States, supra, en casos de incum-plimiento del acuerdo, procede la devolución del caso al tribunal sentenciador para que éste determine qué reme-dio otorgar al acusado, ya sea el cumplimiento específico de lo acordado o el retiro de la alegación de culpabilidad. (3) Sin embargo, como mencionamos, esa norma se circuns-cribe a lo que ocurre cuando el incumplimiento es atribui- *968 ble al Ministerio Público. Por el contrario, en este caso el incumplimiento no es atribuible al Ministerio Público, ya que la imposibilidad para cumplir el acuerdo fue producto de las actuaciones contradictorias del Tribunal de Primera Instancia. Además, en este caso no es posible ordenar el cumplimiento específico de lo acordado —esto es, una pena de diez años por todos los casos presentados en la salas del Tribunal de Primera Instancia, Sala de Bayamón— ya que los casos de la Sala 602 fueron sobreseídos con perjuicio. Al ser así, el único remedio disponible al acusado en este caso es permitirle el retiro de la alegación de culpabilidad de modo que se lleve a cabo el juicio con todos los derechos constitucionales que le cobijan. Procede el relevo de la sen-tencia al amparo de la Regla 129.1 de Procedimiento Criminal, supra.
V
Por los fundamentos expuestos, se confirma la sentencia del Tribunal de Apelaciones que dejó sin efecto la sentencia dictada por el foro primario y la alegación de culpabilidad que hiciera el recurrido Pérez Adorno. Según lo anterior, se devuelve el caso al Tribunal de Primera Instancia, Sala de Bayamón, para que el recurrido Pérez Adorno sea juzgado en los méritos por los delitos, según fueron presentados por el Ministerio Público en la Sala 605.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton y la Juez Asociada Señora Rodríguez Rodríguez concurrieron con el resultado sin opinión escrita. El Juez Asociado Señor Rivera Pérez no intervino. La Jueza Asociada Señora Pabón Chameco no interviene.

 El Ministerio Público presentó acusaciones adicionales ante una tercera sala, la 601. En esa última las partes presentaron el acuerdo. El juez de esa sala, Hon. Julio Soto Ríos, aceptó el acuerdo y la correspondiente alegación de culpabilidad para el delito de robo imputado.

 En su alegato, el Ministerio Público señaló, sin fundamentar, que el acuerdo en controversia no incluía los casos presentados en la Sala 602. Por lo tanto, adujo que el rechazo de la Sala 602 no afectó la sentencia dictada en la Sala 605. No le asiste la razón al Ministerio Público. El acuerdo no señala específicamente la sala en que se estarían presentando los demás casos. Sin embargo, la ambigüedad que pu-diera adolecer el acuerdo es imputable al propio Ministerio Público, quien en defini-tiva es el encargado de suscribir los términos del acuerdo de alegación. De todas formas, la doctrina establece que, cuando hay problemas de interpretación en los acuerdos de alegaciones preacordadas, éstas deben interpretarse a favor del acusado. G.N. Herman, Plea Bargaining, 2da ed., Nueva Jersey, Ed. Matthew Bender, 2004, Sec. 12.04, pág. 240. Debido a que están en juego los derechos fundamentales del acusado, el fiscal deber ser sumamente meticuloso en la redacción de los términos de la alegación. U.S. v. Ingram, 979 F.2d 1179 (7mo Cir. 1992); United States v. Bowler, 585 F.2d 851 (7mo Cir. 1978); Correale v. United States, 479 F.2d 944 (1ro Cir. 1973). Es responsabilidad del Ministerio Público asegurar la claridad y eliminar las ambi-güedades de la alegación preacordada. U.S. v. Giorgi, 840 F.2d 1022 (1ro Cir. 1988).

 Existe discusión en la doctrina sobre cuál de éstos debe ser el remedio que se ha de conceder, según las circunstancias del caso. Véase 5 La Fave, Israel, King, Criminal Procedure 2d págs. 83-95 (1999). Sin embargo, como en este caso no es posible el cumplimiento específico de lo acordado, no es necesario entrar en la discu-sión sobre este particular.