## ESTADO LIBRE ASOCIADO DE PUERTO RICO
## TRIBUNAL DE APELACIONES
## PANEL I

| FÉLIX MULERO BRAÑA, Peticionaria, *Ex parte.* | TA2026CE00419 | APELACIÓN procedente del Tribunal de Primera Instancia, Región Judicial de Bayamón, Sala Superior de Toa Baja. Caso núm.: TB2025CV00274. Sobre: eliminación del registro de ofensores sexuales. |
|---|---|---|

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

### RESOLUCIÓN

En San Juan, Puerto Rico, a 29 de abril de 2026.

La parte peticionaria, el señor Félix Mulero Braña (señor Mulero), impugna la aplicación de la Ley Núm. 243-2011, 4 LPRA sec. 536 a 535h[1], y sostiene que su aplicación retroactiva viola la prohibición constitucional de leyes *ex post facto* y el principio de favorabilidad establecido en el Art. 9 del Código Penal de 2012, 33 LPRA sec. 5009. Además, plantea que el foro primario incidió al mantener su clasificación como ofensor sexual, basado en el delito imputado y no en el delito por el cual resultó convicto[2], así como que el estatuto vulnera su derecho a un debido proceso de ley al no proveer un mecanismo para impugnar dicha clasificación.

Examinada la petición de *certiorari*, así como la oposición a la expedición del auto presentada por el Estado, por conducto de la Oficina del Procurador General, este Tribunal **deniega la expedición del auto**.

---

[1] El referido estatuto fue promulgado con el fin de atemperar la Ley Núm. 266 de 9 de septiembre de 2004, según enmendada, la cual creó el *Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores*, a las disposiciones de la ley federal conocida *Adam Walsh Child Protection and Safety Act of 2006* (Public Law 109-248), 34 USCA sec. 20901 a 20991.

[2] En lo pertinente al recurso ante nuestra consideración, el peticionario fue inicialmente acusado por el delito de actos lascivos, Art. 105 del Código Penal de Puerto Rico de 1974, 33 LPRA ant. sec. 4067. Posteriormente, se suscribió una alegación pre acordada mediante la cual el peticionario hizo alegación de culpabilidad por tres tentativas de actos lascivos sin minoridad; delito por el cual fue convicto y sentenciado a tres años de prisión el 26 de octubre de 2004.

I

El 7 de mayo de 2025, el señor Mulero presentó una petición de eliminación del registro de personas convictas por delitos sexuales y abuso contra menores[3]. En síntesis, adujo que, el 26 de octubre de 2004, fue convicto y sentenciado a tres años de prisión por tres tentativas de infracción al Art. 105 (b) del Código Penal de 1974, 33 LPRA ant. sec. 4067, la cual extinguió el 8 de junio de 2006. Señaló que, a raíz de los delitos de tentativa de actos lascivos por los que fue convicto, el tribunal ordenó su inscripción en el *Registro de personas convictas por delitos sexuales y contra menores de edad* (Registro). Resaltó que su primer registro data del año 2009, en el cual figuraba como clasificación Tipo I.

El señor Mulero arguyó que llevaba más de quince años inscrito en el Registro, por lo que, para el año 2019, ya había cumplido con el mínimo de diez (10) años que exigía la Ley Núm. 28-1997, 4 LPRA ant. sec. 535, vigente al momento de ser sentenciado, y por la Ley Núm. 266-2004, aprobada el 9 de septiembre de 2004, vigente al momento de extinguir su condena. En cuanto a ello, sostuvo que, a la fecha de la aprobación de la Ley Núm. 243-2011, ya había extinguido la pena impuesta por lo que no venía obligado a registrarse más allá del término dispuesto en el Art. 5 de la Ley Núm. 28-1997 y de la Ley Núm. 266-2004.

El 15 de mayo de 2026, el Ministerio Público presentó su oposición a la petición del señor Mulero[4]. En síntesis, sostuvo que, conforme a la Ley Núm. 243-2011 y a lo resuelto por el Tribunal Supremo de Puerto Rico en *Pueblo v. Ferrer Maldonado*, 201 DPR 974 (2019), el estatuto aplicaba retroactivamente, por lo que el peticionario tenía que permanecer en el Registro. Además, arguyó que no se había violentado el derecho del señor Mulero a un debido proceso de ley, pues su reclamo había sido atendido por el foro primario, se le había concedido la oportunidad de ser oído y de presentar evidencia, estuvo asistido por un representante legal y la decisión

---

[3] *Véase*, apéndice del recurso, entrada 1 del *Sistema Unificado de Manejo y Administración de Casos* del Tribunal de Primera Instancia (SUMAC TPI).

[4] *Íd.*, entrada 5 SUMAC TPI.

había estado basada en el expediente. Finalmente, sostuvo que el señor Mulero debía ser clasificado como ofensor sexual Tipo III, en virtud de que la víctima había sido una menor de quince años, por lo que debía permanecer inscrito de por vida en el Registro.

Tras varias incidencias procesales, el 19 de febrero de 2026, el Tribunal de Primera Instancia emitió la resolución final objeto de este recurso[5]. Mediante su dictamen, el foro primario ordenó al Superintendente de la Policía de Puerto Rico y a su Oficina de Sistemas de Información que mantuviera de por vida en el Registro el nombre del señor Mulero. El tribunal concluyó que el peticionario no cumplía con los requisitos de la ley, por lo que estaba impedido de ordenar su eliminación del Registro.

Inconforme, el 6 de marzo de 2026, el señor Mulero presentó una solicitud de reconsideración[6], la cual fue denegada por el foro primario el 9 de marzo de 2026[7].

Inconforme aún, el señor Mulero instó este recurso de *certiorari* el 7 de abril de 2026, y planteó los siguientes errores:

> Abusó de su discreción el Tribunal de Primera Instancia al declarar no ha lugar la solicitud de eliminación del nombre y los datos del peticionario del registro de personas convictas por delitos sexuales y abuso contra menores, y ordenar a la policía de Puerto Rico a mantener el nombre y los datos del peticionario en dicho registro de por vida, aun cuando el peticionario fue declarado convicto por la tentativa del delito tipificado en el artículo 105 del Código penal de Puerto Rico de 1974 sin minoridad.

> Abusó de su discreción el Tribunal de Primera Instancia al declarar no ha lugar la petición de eliminar el nombre del señor Félix Mulero Brañas del registro de personas convictas por delitos sexuales y abuso contra menores aun cuando este cumplió con el término de (10) años establecido en la Ley 28-1997, vigente a la fecha de la sentencia, y de la Ley 266-2004, vigente a la fecha de extinguir la pena impuesta en la sentencia, siendo éste convicto por tentativa del artículo 105 del Código penal de Puerto Rico de 1974 sin minoridad.

> Erró el Tribunal de Primera Instancia al aplicar las disposiciones de la ley número 243-2011 a este caso, en contravención a la prohibición constitucional a la aprobación de leyes ex post facto y al no aplicar el principio de favorabilidad del art. 9 del Código penal de Puerto Rico.

---

[5] *Véase*, apéndice del recurso, entrada 37 SUMAC TPI.

[6] *Íd.*, entrada 38 SUMAC TPI.

[7] *Íd.*, entrada 39 SUMAC TPI

Erró el Tribunal de Primera Instancia al aplicar las disposiciones de la Ley número 243-2011 a este caso, en contravención de lo dispuesto en el art. 9 del Código civil de Puerto Rico y perjudicar derechos adquiridos por el peticionario.

Erró el Tribunal de Primera Instancia al no declarar la inconstitucionalidad de la Ley 243- 2011, que crea el registro de personas convictas por delitos sexuales ya que dicha legislación violenta los derechos constitucionales del peticionario reconocidos en la carta de derechos de nuestra constitución, específicamente la sección 12, toda vez que continúa interfiriendo, limitando, estigmatizando y transgrediendo los derechos civiles que le asisten a todo ciudadano libre a pesar de este haber terminado de cumplir la pena que le fue impuesta.

Erró el Tribunal de Primera Instancia al no declarar inconstitucional la Ley 243-2011 porque viola el debido proceso de ley del peticionario al no disponer un procedimiento justo a toda persona que se le pretenda despojar de su derecho a la vida, libertad o propiedad cuando se trata de un interés protegido ya que estos constituyen derechos fundamentales del ser humano.

(Énfasis omitido).

El 20 de abril de 2026, el Estado, por conducto de la Oficina del Procurador General, presentó su oposición a la expedición de este recurso.

Evaluados los argumentos de ambas partes, resolvemos

II

A

La Regla 32 (B) del Reglamento de este Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 49, 215 DPR __ (2025), nos faculta a revisar, por vía de un recurso de *certiorari*, las resoluciones finales en procedimientos de jurisdicción voluntaria dictadas por el Tribunal de Primera Instancia. Así pues, y conforme a la doctrina que rige este tipo de recurso, y distinto al recurso de apelación, este Tribunal tiene discreción para atender el asunto planteado, ya sea expidiendo el auto o denegándolo. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011); *García v. Padró*, 165 DPR 324, 334 (2005). Ello así, pues el *certiorari* constituye un recurso extraordinario cuya característica se asienta en "la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos." *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

De otra parte, cabe señalar que la discreción para entender en el recurso de *certiorari* no se ejerce en el vacío. La Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional; a decir:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 63, 215 DPR ___ (2025).

B

El *Registro de personas convictas por delitos sexuales violentos y abuso contra menores* fue creado en virtud de la Ley Núm. 28 de 1 de julio de 1997 (derogada 2004) (Ley Núm. 28-1997). Su instauración surgió como respuesta al deber del Estado de proteger a la ciudadanía y a las víctimas de delito. *Exposición de Motivos*, Ley Núm. 28-1997. A través del Registro se brindaría acceso tanto a las agencias de orden público como a la comunidad de conocer el paradero de personas previamente convictas por delitos de carácter sexual o de abuso de menores. *Íd.*

De conformidad a la referida ley, en el Registro se inscribirían las personas convictas por los siguientes delitos o su tentativa:

[V]iolación, seducción, sodomía, actos lascivos o impúdicos; proxenetismo, rufianismo o comercio de personas cuando la víctima fuere menor de dieciocho (18) años y el delito agravado; delito contra la protección a menores, incesto, restricción de libertad cuando la víctima fuere menor de

dieciséis (16) años y no fuere su hijo, secuestro cuando la víctima fuere menor de dieciocho (18) años y no fuere su hijo, robo de menores, perversión de menores cuando se admitiere o retuviere a un menor de dieciocho (18) años en una casa de prostitución o sodomía; maltrato agravado de un menor y agresión sexual conyugal, comprendidos en los Artículos 99, 101, 103, 105, 110(a) y (c) y 111, 115, 122, 131(e), 137 A(a), 160 y 163(e) de la Ley Núm. 115 de 22 de julio de 1974, según enmendada, y en los Artículos 3.2(g) y 3.5 de la Ley Núm. 54 de 15 de agosto de 1989, respectivamente; y el delito de maltrato a menores establecido en los Artículos 37 y 38 de la Ley 75 de 28 de mayo de 1980, según enmendada.

4 LPRA sec. 535 (derogado 2004).

Adicionalmente, también debían registrarse (i) las personas convictas por delitos similares por un tribunal federal, estatal o militar, que se trasladaran a Puerto Rico para establecer su residencia; (ii) quienes al momento de la aprobación de la Ley Núm. 28-1997 estuviesen recluidos por la comisión de alguno de los delitos reseñados; y, (iii) aquellas a quienes se les revocara su libertad por el incumplimiento de alguna condición. *Íd.*

Una vez inscritas en el Registro, las personas se mantendrían en el mismo por un período de diez (10) años. Dicho término se computaría desde que la persona cumpliese su sentencia, desde que comenzaba a cumplir la sentencia bajo el beneficio de libertad a prueba, o desde que era liberada bajo el privilegio de libertad bajo palabra. 4 LPRA sec. 535c (derogado 2004).

Ahora bien, la Ley Núm. 28-1997 fue derogada por la Ley Núm. 266 de 9 de septiembre de 2004, según enmendada, conocida como la *Ley del registro de personas convictas por delitos sexuales y abuso contra menores*, 4 LPRA sec. 536, *et seq.* (Ley Núm. 266-2004). En virtud de esta, se creó el Registro como lo conocemos hoy día. Como parte de su política pública, la nueva ley estableció que el Registro no tenía un propósito punitivo, sino que fungía como un mecanismo para garantizar la seguridad, protección y bienestar general de los sectores más vulnerables y merecedores de protección de nuestra sociedad. *Exposición de Motivos*, Ley Núm. 266-2004.

Previo a cualquier enmienda, la Ley Núm. 266-2004, exigía que se inscribieran en el Registro todas aquellas personas convictas por los delitos allí enumerados. Adicionalmente, exigía el registro de todas las personas que al momento de la aprobación de la ley tuviesen la obligación de inscribirse conforme a las disposiciones de la derogada Ley Núm. 28-1997. 4 LPRA sec. 536a [ed. 2010].

En lo que respecta al periodo de inscripción en el Registro, la nueva ley mantuvo el mismo término de diez (10) años, así como la forma en que se computaría. 4 LPRA sec. 536c [ed. 2010].

No obstante, el 14 de diciembre de 2011, se aprobó la Ley Núm. 243-2011, a los fines de enmendar la Ley Núm. 266-2004 y atemperarla a las disposiciones del *Adam Walsh Child Protection and Safety Act of 2006*, también conocida como el *Sex Offender Registration and Notification Act* (SORNA)[8].

Como parte de dichas enmiendas, se introdujeron tres (3) categorías para clasificar a los ofensores sexuales: tipo I, tipo II y tipo III. 4 LPRA sec. 536a. En lo pertinente al caso ante nuestra consideración, **el ofensor sexual tipo III es definido como aquella persona convicta por los siguientes delitos o su tentativa**:

(i) Violación; seducción; sodomía; **actos lascivos cuando la víctima no ha cumplido los dieciséis (16) años**; incesto; secuestro cuando la víctima fuere menor de dieciocho (18) años y no fuere su hijo, robo de menores comprendidos en los Artículos 99**,** 101, 103, 105, 122, 137-A(a) y 160, respectivamente, de la Ley Núm. 115 de 22 de julio de 1974, según enmendada; y agresión sexual conyugal, según tipificada en el Artículo 3.5 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada.

(ii) Agresión Sexual, según comprendido en los Artículos 142(a), 142(b), 142(c), 142(d), 142(e), 142(g) de Ley 149-2004, según enmendada.

(**iii) Actos lascivos, cuando la víctima no ha cumplido los trece (13) años de edad**; secuestro de menores; secuestro agravado cuando la víctima fuere menor de dieciocho (18) años, según comprendidos en los Artículos 134, 144 y 170(a) de la Ley 149-2004, según enmendada.

(iv) Un Ofensor Sexual Tipo II convicto anteriormente de un delito sexual y que posteriormente comete otro delito sexual.

---

[8] 42 USC sec. 16901, *et seq.*

(v) Cualquier delito antecedente o sucesor de los mencionados en los sub-incisos (i), (ii) y (iii).

4 LPRA sec. 536 (10). (Énfasis nuestro)

Como corolario de lo anterior, también se enmendó el término que una persona debe estar inscrita en el Registro. Así, **quien sea catalogado como ofensor sexual tipo III, deberá permanecer en el Registro de por vida**. 4 LPRA sec. 536c.

Las enmiendas antes reseñadas tuvieron vigencia inmediata tras su aprobación, a excepción de los incisos (f) y (g) del Artículo 4. No obstante, **el estatuto dispuso expresamente que las demás disposiciones podrían tener efecto retroactivo**. 4 LPRA sec. 536n. Sobre ello, el Tribunal Supremo de Puerto Rico tuvo la oportunidad de expresarse en el caso *Pueblo v. Ferrer Maldonado*, 202 DPR 974 (2019). Allí, resolvió que las enmiendas no infringían la cláusula constitucional en contra de la aplicación de leyes *ex post facto*. En detalle, dispuso lo siguiente:

> [L]a aplicación retroactiva de las enmiendas introducidas por la Ley Núm. 243-2011 a la Ley Núm. 266-2004 *no violan* la prohibición constitucional en contra de la aplicación de leyes *ex post facto.* Esta ley, y sus más recientes enmiendas, es de carácter civil, no penal ni punitiva, y cumple cabalmente con la metodología adjudicativa adoptada en *Smith v. Doe.* En aras de evitar cualquier posible ejercicio de arbitrariedad, y para promover la uniformidad en las decisiones de los tribunales en Puerto Rico, luego de una reflexión ponderada sostenemos que: **todas las disposiciones contenidas en las enmiendas introducidas por la Ley Núm. 243-2011 aplican de forma retroactiva**, **independientemente de si la persona que impugna su anotación en el Registro arguye que, en su situación particular, corresponde emplear el principio de favorabilidad**.

*Íd.*, a la pág. 999. (Énfasis nuestro).

III

En su recurso de *certiorari*, el peticionario señala que el Tribunal de Primera Instancia incidió al clasificarlo como ofensor sexual tipo III conforme a las enmiendas incorporadas a la Ley Núm. 266-2004 mediante la Ley Núm. 243-2011. Alega que estas adolecen de vaguedad y amplitud excesiva. De otro lado, sostiene que el tribunal *a quo* laceró sus derechos constitucionales al aplicarle disposiciones que no existían al momento de ser sentenciado, por lo que se debe aplicar el principio de legalidad. Por

último, plantea que el foro recurrido incidió al determinar que las enmiendas a la Ley Núm. 266-2004, por medio de la Ley Núm. 243-2011, obligatoriamente le aplican de manera retroactiva.

Por su parte, el Estado aduce que la aplicación retroactiva de las enmiendas a la Ley Núm. 266-2004 resulta imperativa por virtud del Artículo 15 de la Ley Núm. 243-2011, y de lo resuelto por el Tribunal Supremo en *Pueblo v. Ferrer Maldonado*, 202 DPR 974 (2019). Además, puntualiza que no cabe hablar del principio de legalidad en el presente caso, en tanto la Ley Núm. 266-2004 es una de carácter civil y no penal.

Evaluados los sendos escritos de las partes comparecientes, la resolución objeto de revisión, así como el derecho aplicable, este Tribunal concluye que no se nos ha persuadido de que el foro primario hubiera incurrido en un craso abuso de discreción o que hubiera actuado con prejuicio o parcialidad, o que se hubiera equivocado en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. Por tanto, nuestra intervención en este asunto no se justifica.

IV

En mérito de los antes expuesto, este Tribunal deniega la expedición del auto de *certiorari*.

El juez Pérez Ocasio disiente con opinión escrita.

El juez Sánchez Ramos está conforme y añade lo siguiente:

En este caso, al igual que ocurrió en *Pueblo v. Toro Vélez*, Sentencia de 31 de agosto de 2022 (KLCE202200733 cons. con KLCE202200929), el peticionario no ha alegado que sea falso que, según imputado en la acusación pertinente, la víctima fuese menor de edad. Es decir, si bien la eliminación de la minoridad alegada, para efectos de la negociación conducente a la alegación pre acordada en dicho caso, constriñó el fallo y la sentencia emitida en el procedimiento de orden penal, ello no tuvo el efecto de constituir una declaración de adultez con relevancia u obligatoriedad jurídica frente a cualquier caso civil futuro, como el presente alusivo al Registro de Ofensores Sexuales. Por tanto, la minoridad alegada

originalmente por el Ministerio Público, y eliminada solo para efectos del preacuerdo penal, era susceptible de valoración por parte del tribunal en el presente caso civil, a la vez que objeto de rechazo por parte del peticionario si hubiese querido o podido articularlo para librarse de la aplicación de las disposiciones del Registro. En consecuencia, actuó correctamente el Tribunal de Primera Instancia al denegar la solicitud de excluir al peticionario del Registro, pues este, al cometer el delito de actos lascivos contra una persona que no había cumplido 16 años, está clasificado como un Ofensor Sexual Tipo III, por lo que debe permanecer en el Registro por toda su vida.

Adviértase al respecto que el "Ofensor Sexual Tipo III" incluye a quien sea condenado(a) por "actos lascivos cuando la víctima no ha cumplido los dieciséis (16) años". 4 LPRA sec. 536(10)(a). En este caso, el peticionario fue efectivamente condenado por actos lascivos, y según consta de la correspondiente acusación, la víctima no había cumplido los 16 años.

Contrario a lo que sugiere el peticionario, la Ley Núm. 266-2004, según enmendada (Ley 266), no requiere que la edad de la víctima sea parte intrínseca del delito por el cual este haya sido condenado. Todo lo que la ley requiere es que (i) haya una condena por el delito de actos lascivos y (ii) la víctima de dicho delito sea menor de cierta edad. Aunque lo segundo, cuando forma parte de la condena, implica un agravamiento de la sanción penal, cuando no forma parte de la misma no supone una exclusión sin más del Registro, sino que remite a la evaluación de la realidad a la luz de todos los datos relevantes a esos efectos, como en este caso, que el resultado de la investigación criminal llevó a la determinación de causa probable para acusar y la consecuente autorización de la presentación de una acusación que alegaba minoridad, ante lo cual el peticionario ni siquiera ha intentado alegar la falsedad de esa circunstancia de cara a los efectos del Registro bajo la Ley 266. En ese sentido, la inclusión permanente en el Registro quedó sustentada adecuadamente.

Finalmente, adviértase que la Ley 266 es de carácter civil, no penal, por lo cual, aunque la misma requiere, por sus propios términos, alguna condena penal, el despliegue de sus disposiciones no queda estrictamente delimitado por las particularidades del proceso penal, incluido lo relacionado con alegaciones pre acordadas dirigidas a afectar la sanción penal, si las circunstancias anejas al caso revelan elementos subyacentes que resulten pertinentes bajo la Ley 266. Resolver lo contrario también atentaría contra los propósitos del Registro de velar por la seguridad, protección y bienestar general de la población.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| FÉLIX MULERO BRAÑA | | APELACIÓN procedente del Tribunal de Primera Instancia, Región Judicial de Bayamón, Sala Superior de Toa Baja. |
|---|---|---|
| Peticionaria | | |
| | TA2026CE00419 | |
| Ex parte | | Caso núm.: TB2025CV00274. |
| | | Sobre: eliminación del registro de ofensores sexuales. |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

### VOTO DISIDENTE DEL JUEZ PÉREZ OCASIO

> [E]l temor al crimen y el natural deseo de combatirlo no debe oscurecer el propósito central de la disposición (Sección 10 de la Carta de Derechos de la Constitución puertorriqueña). Libremos el lenguaje original de su glosa abultada. *Pueblo v. Lebrón,* 108 DPR 324, 327 (1979).

En esta ocasión, me veo obligado a *disentir* de mis distinguidos compañeros de Panel, por entender que al peticionario, Feliz Mulero Braña, *le asiste la razón.* Respetuosamente, entiendo que el Tribunal de Primera Instancia, Sala Superior de Bayamón, en adelante, TPI-Bayamón, se equivocó al no ordenar la eliminación del peticionario del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores, en adelante, Registro, en virtud de la Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores, Ley Número 266 de 9 de septiembre de 2004, en adelante, Ley Núm. 266-2004, 4 LPRA sec. 536 *et seq*

Mulero Braña fue **_convicto_** por tres (3) **_tentativas_** del delito de Actos Lascivos o Impúdicos mediante fuerza o amenaza, del derogado Artículo 105(b) del Código Penal de 1974, Ley Número 115 de 22 de junio de 1974, en adelante, Código Penal, 33 LPRA ant. sec. 4067. Por ello, fue sentenciado a *tres (3) años de prisión.* En el año

2009 fue inscrito por *primera vez* en el Registro con una *clasificación Tipo I*, quienes vienen obligados a permanecer en el Registro por un periodo de *quince (15) años posterior a cumplir su sentencia*. En la documentación para el Registro, surge que la víctima era una menor de edad de quince (15) años.

Posteriormente, el 7 de mayo de 2025 el peticionario solicitó su eliminación del referido Registro. Arguyó que fue sentenciado cuando las disposiciones de la Ley Número 28 de 1 de julio de 1997, en adelante, Ley Núm. 28-1997, la cual creó el Registro, estaba vigente. Adujo, además, que al momento de las enmiendas a la Ley 266-2004, *supra*, por virtud de la Ley Núm. 243-2011, *supra*, las cuales crearon un sistema de categorización de ofensores, entraron en vigor luego de que este cumpliera con la sentencia impuesta en su contra en el año 2006.

A esto último, se opuso el Ministerio Público, argumentando que la Ley Núm. 266-2004, *supra*, es de *carácter civil y no punitiva*. Sostuvo, por lo tanto, que, según resuelto en *Pueblo v. Ferrer Maldonado*, 201 DPR 974 (2019), la aplicación retroactiva de las enmiendas proscritas por la Ley Núm. 243-2011, *supra*, no violentaba ninguna protección constitucional.

Así, el 19 de febrero de 2026, el TPI-Bayamón emitió la *"Resolución"* recurrida. Guiado por la aplicación retroactiva de las enmiendas proscritas por la Ley Núm. 243-2011 a la Ley Núm. 266-2004, según resuelto en *Pueblo v. Ferrer Maldonado*, supra, y por la *"Sentencia"* del Tribunal Supremo de Puerto Rico en *Pueblo v. Toro Vélez*, 212 DPR 919 (2022), el Foro Primario concluyó que la eliminación en la alegación preacordada de la minoridad alegada en las acusaciones, no justifica la remoción del aquí peticionario del Registro. De esta manera, reclasificó a Mulero Braña como ofensor Tipo III, quienes vienen obligados a permanecer en el Registro *de por vida.*

Este juez no ignora la naturaleza polarizante de la materia en controversia. La misma no solo impresiona, con justa causa, la razón y las emociones, sino que ha propulsado un rico debate sobre el rol social y jurídico de los registros de ofensores sexuales. Guiado por ese mismo ánimo pertrechado de responsabilidad socio-jurídica que satura la conversación, me siento compelido a consignar en las siguientes palabras mi posición al respecto.

## I.

En ocasiones, son los asuntos que parecen estar inmiscuidos de manera invisible en el derecho por su aparente claridad o su incontestado establecimiento en la práctica jurídica, los que requieren una segunda mirada. A veces, es esa revisión la que pone en relieve controversias ignotas, o poco visitadas.

Así, en mi análisis de la controversia que hoy nos ocupa, he concluido que gran parte de la médula de la controversia ante nos se desprende de la naturaleza de la Ley Núm. 266-2004, *supra*. Si el referido estatuto es, en efecto, uno de carácter civil, entonces no es necesario evaluar asuntos de retroactividad, legalidad, favorabilidad o sobre las protecciones contra leyes *ex post facto*. Por otro lado, si la Ley Núm. 266-2004, *supra* y el Registro son punitivas, resulta necesario evaluar si procede o no, en el caso de autos, la aplicación retroactiva de las enmiendas por virtud de la Ley Núm. 243-2011, *supra*.

Para ello, me he hecho la siguiente pregunta: ¿qué hace un estatuto civil o penal? Usualmente, la naturaleza de una ley se decreta en la exposición de motivos. Sin embargo, esto no puede bastar.

Un *estatuto penal* es aquel que busca castigar las conductas delictivas de un individuo. Las acciones de esta naturaleza son catalogadas como delitos precisamente porque van contra el entendido social de qué y cómo se debe proteger una comunidad. Es

precisamente por esto que los delitos estatuidos en nuestro Código Penal están divididos por bienes protegidos. Por ejemplo, hay un título dedicado a los delitos que van contra el bien protegido de la persona, y otro para aquellos que van contra el bien protegido de la propiedad. De esta manera, y a nombre del bienestar general, la seguridad y la protección social, un estatuto penal establece los delitos y las consecuencias de los mismos.

Por su parte, un *estatuto civil*, en síntesis, es aquel que busca regular las relaciones, obligaciones y derechos que subsisten entre las relaciones personales y comunitarias. Las leyes de esta naturaleza están mayormente dirigidas a estructurar la vida privada, mientras que los estatutos penales son criaturas de la política pública.

Ahora, al someter la Ley Núm. 266-2004, *supra,* a este escrutinio *se me hace imposible concluir que la misma es una disposición legal de carácter civil.*

En su exposición de motivos, la Ley Núm. 266-2004 dispone que "[e]l registro que se crea no tiene propósito punitivo; es un medio por el cual el Estado puede velar por la seguridad, protección y bienestar general". En virtud de ello, los Tribunales han aceptado las palabras sacramentales al respecto como la caracterización axiomática del estatuto.

Sin embargo, es harto conocido que una máxima de nuestro estado de derecho responde a que el nombre o la categorización textual de algo, no define su naturaleza. *Cordero Vargas v. Pérez Pérez,* 198 DPR 848, 868 (2017); *Borschow Hosp. v. Jta. de Planificación,* 177 DPR 545, 567 (2009); *Meléndez Ortiz v. Valdejully,* 120 DPR 1, 24 (1987); *Comisión Servicio Público v. Tribl. Superior,* 78 DPR 239, 246 (1955). Es decir, en nuestro ordenamiento jurídico se puede adjudicar la naturaleza de un asunto en correlación a sus efectos prácticos.

Así, en el caso de epígrafe, conviene cuestionarse la condición de la Ley Núm. 266-2004, *supra*, en respuesta al ecosistema en el que la misma se crea y del cual se nutre. Habiendo hecho lo propio, me veo obligado a concluir que la misma es un estatuto penal, y el Registro un método punitivo. Veamos.

**A. El Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores**

Los registros de ofensores sexuales o delincuentes no es una creación del siglo en curso. Si bien estos han existido en los Estados Unidos de América desde la década del 1930, usualmente los mismos se creaban para el beneficio del Estado. Sin embargo, no es hasta la década del año 1990 que los registros cobran mayor popularidad y exposición legislativa. Es en medio de un clima social saturado de casos de violencia sexual, y de extrema notoriedad, que se crea el primer estatuto para la publicación, en beneficio de la comunidad, de ofensores sexuales. *Community Protection Act*, 1990 Wash. Laws, Chapter 3, section 101 *et seq*.

En el año 1994 el Congreso Federal creó el *Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act*, 42 U.S.C. section 1719. En síntesis, fue el primer estatuto federal que ordenó la inscripción, normalmente por un periodo de diez (10) años, a los convictos de delitos de naturaleza sexual o contra menores de edad. De hecho, no registrarse cuando la Ley se lo exigiera a un individuo constituía de por sí un delito.

Unos años más tarde, la Corte Suprema Federal atendió la primera controversia, respecto a los registros compulsorios de ofensores. En *Smith v. Doe*, 538 US 84 (2003), el Alto Foro Federal estableció que la aplicación retroactiva de las leyes que compelen la registración compulsoria de ofensores no violenta la protección contra leyes *ex post facto*, pues estas no tienen fines punitivos.

Ahora bien, en Puerto Rico, el primer estatuto relevante a este asunto fue la Ley Núm. 28-1997. El mismo estableció el Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores. En su Exposición de Motivos, el Legislador dispuso que la misma se creaba como método de seguridad y protección, "y sin ningún propósito punitivo". En su Artículo 3, la Ley Núm. 28-1997, *supra*, dispuso que las personas convictas, entre otros, por el delito, *o sus tentativas*, de Actos Lascivos o Impúdicos, según consagrado en el Artículo 105 del Código Penal, supra, deberán inscribirse en el Registro.

Más adelante, disponía que las personas contempladas en el mencionado Artículo 3 de la Ley Núm. 28-1997, *supra*, debían permanecer inscritas durante diez (10) años luego de cumplir la sentencia impuesta. Finalmente, resaltamos que en su Artículo 9, el estatuto en cuestión dispuso que los individuos obligados a registrarse que incumplieran con las disposiciones de la Ley incurrirían en delito grave. Esta ley permitía que un ofensor sexual reincidente, el cual debía ser inscrito de por vida, evidenciara en una vista su rehabilitación.

Ahora bien, más adelante, la Ley Núm. 28-1997, *supra*, fue derogada por la Ley Núm. 266-2004, *supra*. Nuevamente, el Legislador volvió a establecer en la Exposición de Motivos de esta nueva Ley que no se fundamentaba en consideraciones punitivas, sino de protección y bienestar social. Además, estableció como política pública la necesidad de un Registro, mediante estas expresiones:

> Ante el peligro que representa que la persona convicta por delitos de esta naturaleza incurra nuevamente en esa conducta y ante el riesgo que puede representar y el daño que puede causar una persona con tendencia irreprimida de cometer delitos sexuales es necesario establecer un Registro en el que se anote su dirección y que contenga información sobre su persona y otros datos relevantes.

El Artículo 3 del estatuto en cuestión dispone que las personas registradas serán:

(a) Los Ofensores Sexuales Tipo I, los Ofensores Sexuales Tipo II y los Ofensores Sexuales Tipo III.

(b) Las personas que hayan sido o sean *convictas* por delitos similares, o sus tentativas o conspiraciones, a los enumerados en el Artículo 2 de esta Ley por un tribunal federal, estatal, de tribus indígenas reconocidas por el gobierno federal, extranjero o militar, y se les haya garantizado el debido proceso de ley en el país que fueron convictos, que se trasladen a Puerto Rico para establecer su residencia, o que por razón de trabajo o estudio se encuentren en Puerto Rico, aunque su intención no sea la de establecer domicilio en el País.

(c) [...]

(d) [...]

(e) ***Quedarán registradas las personas que al momento de la aprobación de esta Ley, tenían la obligación de registrarse bajo la Ley 28-1997, según enmendada.***

(f) [...]

(g) Las personas que hayan sido *convictas* por cualquiera de los delitos enumerados en el Artículo 2 de esta Ley y hagan alegación de culpabilidad por cualquiera de los delitos o sus tentativas o conspiración. En estos casos será compulsorio y no objeto de alegaciones pre-acordadas, el ingreso de la persona convicta al Registro.

(Énfasis suplido).

Sin embargo, es importante apuntalar que este nuevo cuerpo normativo, se distanció parcialmente de las disposiciones orientadas a la rehabilitación. Por ejemplo, eliminó la posibilidad de evidenciar la rehabilitación de un reincidente mediante vista.

Igual que su predecesora, la Ley Núm. 266-2004, *supra*, catalogó como un delito grave que una persona obligada a inscribirse en el Registro incumpliera con las disposiciones de esta Ley. A estos efectos, dispone que *"[t]oda persona que infrinja las disposiciones de esta Ley incurrirá en delito grave y convicta que fuere será sancionada con pena de multa que no excederá de seis mil (6,000) dólares y pena de reclusión de dos (2) años, o ambas penas,*

*a discreción del Tribunal"*. Artículo 10 de la Ley Núm. 266-2004, *supra*, sec. 536h.

Ahora bien, las enmiendas de la Ley Núm. 243-2011, *supra*, hicieron aún más represiva la Ley Núm. 266-2004, *supra*. Estas establecieron un sistema para clasificar a los ofensores. Así, el Artículo 2 de la precitada Ley distingue y define entre Ofensor Sexual Tipo I, Ofensor Sexual Tipo II y Ofensor Sexual Tipo III.

*Ofensor Tipo I*, según estas enmiendas, se refiere a:

Personas que resulten ***convictas*** por los siguientes delitos o su ***tentativa*** o conspiración, cuando se incurre en conducta constitutiva de ***abuso sexual*** [...].

*Ofensor Sexual Tipo II*, según estas enmiendas, se refiere a:

Personas que resulten **convictas** por los siguientes delitos o su **tentativa** o conspiración **cuando la víctima fuere un menor de edad:**

(i) ***Actos lascivos o impúdicos***; proxenetismo o comercio de personas; delitos contra la protección de menores, perversión de menores cuando se admitiere o retuviere a un menor de dieciocho (18) años en una casa de prostitución o sodomía, comprendidos en los Artículos 105, 110 (a) y (c), 111(a) y 115 de la Ley Núm. 115 de 22 de julio de 1974, según enmendada [Nota: Derogada por la Ley 149-2004, derogada y sustituida por la Ley 146-2012, según enmendada, "Código Penal de Puerto Rico"].
[...].

*Ofensor Sexual Tipo III*, según estas enmiendas, se refiere a:

Personas que resulten convictas por los siguientes delitos o su ***tentativa***:

(i) Violación; seducción; sodomía; ***actos lascivos cuando la víctima no ha cumplido los dieciséis (16) años***; incesto; secuestro cuando la víctima fuere menor de dieciocho (18) años y no fuere su hijo, robo de menores comprendidos en los Artículos 99, 101, 103, 105, 122, 137-A (a) y 160, respectivamente, de la Ley Núm. 115 de 22 de julio de 1974, según enmendada [Nota: Derogada por la Ley 149-2004; derogada y sustituida por la Ley 146-2012, según

enmendada, "Código Penal de Puerto Rico"]; y agresión sexual conyugal, según tipificada en el Artículo 3.5 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada.

[…].

Además, se establecieron las siguientes definiciones, respecto al término "convicto" y "delito sexual":

(1)     "**Convicto**". — significa toda persona **convicta** por algún delito, sus **tentativas** o conspiraciones, **según establecidos en esta Ley**. Incluye, además, a toda persona que disfrute de libertad bajo palabra, condicionada, libertad a prueba o algún método de cumplimiento alterno de la pena de reclusión, por los delitos, sus tentativas o conspiraciones, establecidas en esta Ley.

(2)     […]

(3)     "Delito Sexual" — En general, excepto por lo dispuesto en los sub-incisos (a) y (b), incluye lo siguiente:

> (i)     un delito **que tenga como elemento constitutivo un acto sexual o conducta sexual con otra persona;**
>
> (ii)    un delito específico contra un menor de edad;
>
> (iii)   […]

Ley Num. 266-2004, supra, sec. 536.
(Énfasis nuestro).

Por otro lado, el Artículo 5 de la Ley Núm. 266-2004, *supra*, sec. 536c, dispone las obligaciones de la persona sujeta al registro. En este articulado, expone las instrucciones para registrarse y mantenerse actualizado en el mismo. Además, explica desglosa los términos de inscripción de la siguiente manera:

a. Quince (15) años, si el convicto es un Ofensor Sexual Tipo I;

b. Veinticinco (25) años, si el convicto es un Ofensor Sexual Tipo II; y

c. De por vida, si el convicto es un Ofensor Sexual Tipo III.

Precisa destacar que el Artículo 15 de la Ley Núm. 243-2011, *supra,* el Legislador dispuso que "[l]os incisos (f) y (g) del Artículo 4

tendrán efecto prospectivo", pero "[l]as demás disposiciones ***podrán tener efecto retroactivo***". (Énfasis nuestro).

Por otro lado, nuestro Tribunal Supremo se expresó por primera vez respecto a la naturaleza de los registros de ofensores en el caso *Pueblo v. Hernández García*, 186 DPR 656 (2012). Aunque reconoció los registros como un mecanismo de seguridad, aceptó que los mismos surgen como corolario "*del incumplimiento de una ley penal por parte de un ciudadano*", y declaró que la inscripción en el Registro es "una medida de seguridad que recae como parte de su sentencia". *íd*, pág. 677. Por ello, aplicó el p*rincipio de favorabilidad* en su análisis de la Ley Núm. 266-2004.

Sin embargo, en *Pueblo v. Ferrer Maldonado*, 201 DPR 974 (2019), nuestra más Alta Curia se alejó parcialmente de las expresiones en *Pueblo v. Hernández García*, supra, para aclarar que las medidas de seguridad alusivas en el mencionado caso se refieren únicamente a aquellas dirigidas a la seguridad pública. Además, en este caso, nuestro Tribunal Supremo evaluó el Registro y reiteró que la misma es de naturaleza civil.

No obstante, se hizo la pregunta que este Juez hoy se hace: "Más allá de que la Asamblea Legislativa de Puerto Rico disponga en su Exposición de Motivos que nos encontramos ante una ley no punitiva, ¿en realidad, este cuerpo normativo constituye una?". *Pueblo v. Ferrer Maldonado,* supra, pág. 995. El foro *a quo* contestó en la negativa. Concluyó, por lo tanto, que "todas las disposiciones contempladas en las enmiendas introducidas por la Ley Núm. 243-2011 aplican de forma retroactiva [...]". *Íd.*, supra, pág. 999.

Finalmente, y por ser pertinente a la controversia del caso de epígrafe, distinguimos la más reciente *"Sentencia"* de nuestro Tribunal Supremo, en el caso de *Pueblo v. Toro Vélez*, 212 DPR 919 (2023). Por estar igualmente dividido, el Foro Máximo confirmó la

determinación de un panel hermano en este Tribunal.[1] En el caso referido, el peticionario fue convicto, mediante alegación preacordada, por el delito de tentativa de actos lascivos sin minoridad, contra dos (2) menores de edad en dos (2) instancias distintas. Surge, además, que en su sentencia, el Foro Primario ordenó al peticionario a no relacionarse con menores de edad y a registrarse como ofensor sexual.

El Tribunal de Apelaciones observó que "de las definiciones de los Ofensores Sexuales Tipo I, II y III que el delito de actos lascivos no está incluido bajo ninguna de las tres categorías cuando la víctima es mayor de edad". Sin embargo, aunque este fue convicto por el delito de tentativa de actos lascivos sin minoridad, razonó que "si bien la eliminación de la minoridad alegada para efectos de la negociación conducente a la alegación preacordada en dichos casos constriñó el fallo y la sentencia emitida en tales procedimientos de orden penal, ello no tuvo el efecto de constituir una declaración de adultez con relevancia u obligatoriedad jurídica frente a cualquier caso civil futuro, como el presente alusivo al Registro".

### i. Efectos socio-jurídicos del registro

He reseñado como nuestro ordenamiento se ha dividido tan dramáticamente para determinar la naturaleza jurídica de la Ley Núm. 266-2004, algo que en cualquier otro estatuto, disfruta del acuerdo unánime de la comunidad jurídica. Creo que esto ocurre precisamente porque clasificar un estatuto como este en el ámbito civil nos obliga a encandilar la razón ante las consecuencias punitivas de la misma, en pro de un sentir justiciero. Lo cierto es que "[n]o podemos ser indiferentes al Derecho. A lo que tenemos que

---

[1] KLCE202200733 cons. KLCE202200929.

ser indiferentes es al aplauso o reproche que provenga de la tribuna pública".[2]

La inscripción en el Registro de un individuo trastoca, en síntesis, todas las áreas de su vida. En su obra, la Dra. Iris Y. Rosario Nieves, *El Ofensor Sexual Peligroso, Naturaleza jurídica e (in)eficiencia del Registro de Ofensores Sexuales*, Publicaciones Puertorriqueñas, pág. 227 (2022), nos ofrece una subsección intitulada "*Las consecuencias colaterales del Registro de Ofensores Sexuales*", en la que recopila parte de la evidencia empírica que ha demostrado cómo se afecta la vida de un individuo registrado en la libre comunidad.

Una persona que ha cumplido con una pena criminal, para reinsertarse a la comunidad, necesitará obtener un empleo para sustentarse, y vivienda. Sin embargo, la inscripción en un registro como ofensor reduce y limita estas oportunidades. Rosario Nieves, Op. cit., págs. 228-241. Como consecuencia, estas personas "no tienen la libertad de escoger en donde van a habitar, trabajar y forjar lazos comunitarios".

La letrada hace un brillante análisis de la efectividad de los registros, en contraposición a la narrativa sobre la cual son edificados. Es decir, como vimos previamente, los registros han sido catalogados como disposiciones de naturaleza civil, con el único propósito de proteger a la comunidad contra individuos peligrosos. En su obra, la Dra. Rosario apunta que la mayoría de las ofensas sexuales son cometidos por extraños, y desmiente la creencia popular, también impulsada por estatutos como la Ley Num. 266-2004, *supra*, que los ofensores sexuales son, en su gran mayoría, reincidentes. Rosario Nieves, Op. cit., págs. 242-243. Estoy, pues, convencido, que "[l]a clasificación del registro como medida civil

---

[2] Resolución de *Pueblo v. Torres Pérez*, 209 DPR 367, 368 (2022), expresión de conformidad del Juez Martínez Torres.

tiene como propósito poder imponerla extensivamente a todas las personas que se consideren peligrosas, aun cuando ello suponga su aplicación retroactiva". Íd., pág. 247.

En su disidente en el caso de *Smith v. Doe*, supra, la Juez Ruth Bader Ginsburg hace una observación que hoy extrapolo en el caso de marras. Un individuo que se ha sometido, mediante una sentencia penal, al proceso de rehabilitación, no podrá beneficiarse de estos frutos mientras enfrente las consecuencias y estigmas sociales de permanecer en un registro de ofensores.

Así, coincidimos con las expresiones de la Dra. Rosario Nieves, al ilustrar el sentir detrás de un esfuerzo jurídico-social, aparentemente para el bienestar general, pero que perpetúa indefinidamente el castigo mediante la registración compulsoria de ofensores:

> Es un escenario de eterna sensación de crisis, en el cual predominan, entre otra cosas, las siguientes dinámicas: las sanciones punitivas se convierten en justicia expresiva; el tono de la política criminal es emocional, de tipo populista; las víctimas son las protagonistas y su protección desplaza cualquier derecho de las personas acusadas y condenadas [...].

> Rosario Nieves, op. cit., pág. 2.

### B. Alegaciones preacordadas

En Puerto Rico, el procedimiento para reglamentar el sistema de alegaciones preacordadas fue originalmente adoptado por el Tribunal Supremo en *Pueblo v. Mojica Cruz*, 115 DPR 569, 589-591 (1984). Posteriormente, la Legislatura aprobó la Regla 72 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, en la cual incorporó estatutariamente las alegaciones preacordadas a nuestro ordenamiento jurídico. La mencionada Regla codifica los requisitos que se tienen que cumplir al realizar la alegación preacordada, de

manera que ésta pueda dar base a una sentencia condenatoria. *Pueblo v. Pérez Adorno*, 178 DPR 946, 957 (2010).

La mencionada Regla establece, en lo pertinente al caso de epígrafe, lo siguiente:

> En todos aquellos casos en que mediaren alegaciones preacordadas entre la defensa del imputado y *el representante del Ministerio Público*, se seguirá el siguiente procedimiento:
>
>> (1) ***El fiscal*** y el imputado, por mediación de su abogado, podrán iniciar conversaciones con miras a ***acordar que, a cambio de una alegación de culpabilidad por el delito alegado en la acusación o denuncia, o por uno de grado inferior o relacionado***, ***el fiscal*** se obliga a uno o varios de los siguientes cursos de acción: (a) solicitar el archivo de otros cargos pendientes que pesen sobre él; (b) eliminar alegación de reincidencia en cualquiera de sus grados; (c) recomendar una sentencia en particular o no oponerse a la solicitud que haga la defensa sobre una sentencia específica, entendiéndose que ni lo uno ni lo otro serán obligatorios para el tribunal, o (d) acordar que determinada sentencia específica es la que dispone adecuadamente del caso. El tribunal no participará en estas conversaciones.
>
> [...]
>
>> (7) Al decidir sobre la aceptación de una alegación preacordada el ***tribunal deberá cerciorarse*** de que ha sido hecha con pleno conocimiento, conformidad y voluntariedad del imputado; ***que es conveniente a una sana administración de justicia, y que ha sido lograda conforme a derecho y a la ética.*** A este fin, el tribunal podrá requerir del fiscal y del abogado del imputado aquella información, datos y documentos que tengan en su poder y que estimen necesarios, y podrá examinar al imputado y a cualquier otra persona que a su juicio sea conveniente.
>
> [...]

Aun cuando el Tribunal acepte la alegación, no está obligado a seguir las recomendaciones sobre la sentencia especifica a

imponerse. El Tribunal tiene discreción para imponer la sentencia que entienda que procede según el derecho aplicable. *Pueblo v. Acosta Pérez*, 190 DPR 823, 835 (2014), citando a *Pueblo v. Dávila Delgado*, 143 DPR 157, 171 (1997).

Salvo que haya un claro abuso de discreción, el tribunal de mayor jerarquía no sustituirá la discreción otorgada a los tribunales de instancia para aceptar, rechazar o modificar una alegación preacordada. *Pueblo v. Santiago Agricourt*, 147 DPR 179, 210-211 (1998); *Pueblo v. Marrero Ramos, Rivera López* 125 DPR 90, 98 (1990). ***El Foro Primario estuvo en posición de evaluar la aceptación voluntaria del acuerdo, con conocimiento de la naturaleza del delito imputado y las consecuencias de aceptar la alegación****. Pueblo v. Santiago Agricourt*, supra.

En adición a lo previo, es importante apuntalar que, en los casos de naturaleza criminal, *es el Secretario del Departamento de Justicia de Puerto Rico y los fiscales*, quienes ostentan y tienen la facultad de "investigar los hechos delictivos y la decisión de a qué persona acusar y procesar criminalmente, y por qué delito entrar en negociaciones con los imputados de delito y acusados [...]". *Pueblo v. Dávila Delgado*, supra, pág. 170. Además, es esta extensión de nuestro sistema de gobierno quien disfruta de la discreción de iniciar negociaciones con los imputados de delito y acusados. *Pueblo v. Quiñones Rivera*, 133 DPR 332, 338 (1993). Es decir, el Poder Judicial de Puerto Rico "no tiene injerencia alguna en la decisión original que hace el Poder Ejecutivo sobre si procede, o no, acusar a determinada persona en relación con hechos posiblemente delictivos". *Pueblo v. Cintrón Antonsanti*, 148 DPR 39, 43 (1999).

Sin embargo, el Estado y el acusado no están obligados a considerar un intercambio. "Ello es un área que responde propiamente a la coincidencia de criterios por cualesquiera razones o motivos" particulares que tengan cada una de las partes. *Pueblo v.*

*Dávila Delgado,* supra, pág. 171; *Pueblo v. Figueroa García,* 129 DPR 798, 879 (1992); *Pueblo v. Ayala Rodríguez,* 116 DPR 382, 386 (1985).

Por otro lado, nuestro más Alto Foro ha determinado que *el Ministerio Público* viene obligado a evaluar "la evidencia que obra en manos del Estado para probar el delito, la naturaleza del delito imputado; las circunstancias en las que el mismo se llevó a cabo; la posición asumida por las víctimas y testigos del delito; el historial delictivo del imputado; la deseabilidad de aligerar los procedimientos judiciales, y las probabilidades de éxito o fracaso del caso". *Pueblo v. Santiago Agricourt,* supra, págs. 195-196, citando la Orden Administrativa Núm. 9309 de 23 de noviembre de 1993 del Secretario de Justicia, pág. 1.

El Tribunal Supremo de Puerto Rico ha enfatizado los beneficios de las alegaciones de culpabilidad para el sistema de justicia criminal. *Pueblo v. Santiago Agricourt,* supra, pág. 194. Cuando un acusado se declara culpable, el Estado no solo queda relevado de celebrar un procedimiento criminal que puede ser extenso y costoso, sino que mediante estos acuerdos se logran aliviar los cargados calendarios de los tribunales; y con ello, los acusados pueden ser enjuiciados dentro de los términos requeridos por el ordenamiento procesal penal. Id., págs. 194-195. No solo se ha sostenido la validez constitucional del mecanismo procesal de la alegación preacordada, sino que se ha reconocido que es una práctica de gran utilidad que debe ser fomentada. *Íd.,* pág. 195. Véase, además, *Boykin v. Alabama,* 395 U.S. 238, 242-244 (1969); *Pueblo v. Marrero Ramos, Rivera López,* 125 DPR 90, 96 (1990).

Resulta indiscutible el hecho de que, sin el alivio provisto por este mecanismo en nuestro sistema judicial, sería muy difícil, si no imposible, cumplir con la casuística del procedimiento criminal, de manera rigurosa, justa y efectiva. *Pueblo v. Mojica Cruz,* 115 DPR

569, 577 (1984). Además, las personas que aceptan su culpabilidad quedan liberadas "de la angustia martirizante que provoca la natural reacción de haberse sometido a un enjuiciamiento criminal". (Citas omitidas) *Pueblo v. Santiago Agricourt,* supra, pág. 195. Al cabo, las alegaciones preacordadas, impactan la tarea judicial en un plano pluridimensional.

## II.

En su disidente en el caso de *Pueblo v. Toro Vélez,* supra, pág. 943, el Juez Kolthoff Caraballo reflexiona que la Alta Curia estaba convocada "a dilucidar si una acusación penal es suficiente para generar una obligación de inscripción en el Registro de Ofensores Sexuales. Del mismo modo, debíamos evaluar si una convicción por el delito de actos lascivos sin minoridad exige la inscripción en el Registro". Creo que, de igual modo, este Panel, estaba llamado, entre otros asuntos, a evaluar exactamente lo mismo.

Mulero Braña fue ***convicto*** por el delito de *tentativa de actos lascivos.* Al momento de su convicción, se encontraba vigente la Ley Núm. 28-1997, supra. Luego de evaluar el derecho previamente reseñado, y como resultado de mi análisis, concluyo lo siguiente:

### A. El Registro y los estatutos que lo nutren son penales

Por lo explicado en mi introducción, debo puntualizar que es mi posición que tanto el Registro, como los estatutos que lo crean y coordinan son penales, y no civiles. Reconozco que la costumbre jurídica de los tribunales, independientemente si son los de primera, segunda o última instancia, es categorizarlos como disposiciones civiles. Sin embargo, aun nuestro Alto Foro, en el caso de *Pueblo v. Hernández García,* supra, reconoció que estos son producto *sine qua non* de la conducta y estatutos penales.

Incluso, sostengo que la mejor evidencia se encuentra, precisamente, en la Exposición de Motivos de estatutos como la Ley

Núm. 28-1997, supra, y la Ley Núm. 266-2004, supra. En ambos, e incluso en aquellas leyes que han enmendado este último, el Legislador siempre ha expresado que su motivación es la protección social, e imponerles a los ofensores como resultado – y yo añado castigo – de delinquir, el desdén de aparecer públicamente inscrito en el Registro.

Como expliqué previamente, estar inscrito en el Registro tiene efectos – todos negativos – para el individuo. Si bien puedo apreciar su utilidad, y el posible sentido de protección que pueda brindarle a terceros, no puedo ignorar que las consecuencias que tiene que enfrentar el inscrito, luego de cumplir su condena, tiene el resultado de perpetuar el castigo que ya cumplió.

Por último, notemos que si un ofensor obligado a registrarse en virtud de la Ley Núm. 266-2004, *supra*, incumple, enfrenta las consecuencias penales de un delito grave. En buena conciencia, no puedo concluir que este estatuto es de naturaleza civil.

**B. La Ley Núm. 243-2011, *supra*, no aplica en este caso**

Es mi contención que a Mulero Braña le aplicaba únicamente la Ley Núm. 28-1997, *supra*, y aquellas de la Ley Núm. 266-2004, *supra*, previo a las enmiendas de la Ley Núm. 243-2011, *supra*. En la primera de estas, se disponía que una persona convicta por el delito, o su tentativa, de Actos Lascivos o Impúdicos, debía inscribirse en el Registro por un periodo de diez (10) años posterior a cumplir su sentencia. También, las disposiciones de la Ley Núm. 266-2004, *supra*, contemplaban este mismo tiempo de inscripción para aquellos que, al momento de su aprobación, se encontraban registrados en virtud de la Ley Núm. 28-1997, *supra*. Es por esto que el Artículo 3 la Ley Núm. 266-2004, *supra*, dispone que "quedarán registrados las personas que al momento de la aprobación de esta Ley, tenían la obligación de registrarse bajo la Ley 28-1997, según enmendada".

Además, distinto a lo propuesto en la *"Resolución"* recurrida, el caso de *Pueblo v. Toro Vélez,* supra, se distingue significativamente del de autos. En el mencionado caso, se le aplicaron las enmiendas de la Ley Núm. 243-2011, supra, a Toro Vélez, puesto que este se encontraba cumpliendo su sentencia al momento de su aprobación. En el caso de autos, Mulero Braña había cumplido su sentencia, y llevaba dos (2) años inscrito en el Registro al momento de la aprobación de las mismas. Por ello, entiendo que las enmiendas de la Ley Núm. 243-2011*, supra,* no pueden ser aplicadas retroactivamente al aquí peticionario.

### C. La minoridad no puede ser considerada

Por otro lado, si bien el caso de *Pueblo v. Ferrer,* supra, resolvió que las enmiendas proscritas en la Ley Núm. 243-2011, *supra,* son retroactivas, proponemos lo mismo que el panel hermano en el caso apelativo de *Pueblo v. Toro Vélez* observó. Lo cierto es que los hechos particulares de la convicción de Mulero Braña no se recogen, como cuestión de derecho, en las clasificaciones provistas en la Ley Núm. 243-2011, *supra.* Por eso, considero que fue un error que el Foro Primario ordenara su inscripción como Ofensor Tipo I y posteriormente como Ofensor Tipo III. Este debió quedar inscrito, en virtud de las disposiciones que al momento de cumplir su sentencia estaban vigentes, las cuales describí en el epíteto anterior.

Según vimos, el Ofensor Tipo I es aquel que sea convicto por delitos, o sus tentativas, constitutivos de abuso sexual, en virtud de una lista taxativa de siete (7) categorías. Sin embargo, los hechos del caso de marras no se comparan con ninguno de estos. Lo mismo ocurre con el Ofensor Tipo II, cuya premisa inicial requiere el elemento de minoridad en la convicción. Finalmente, tampoco es correcto catalogar a Mulero Braña como Ofensor Tipo III, puesto que el único delito o tentativa de actos lascivos que contemplan las seis

(6) categorías de este ofensor, es al amparo del Código Penal vigente, y no el del año 1974.

Es decir, la minoridad es requisito en la convicción de actos lascivos o su tentativa, para que proceda el registro. Así fue reconocido la opinión de conformidad de la Juez Fiol Matta en el caso de *Placer Román v. ELA y otros*, 193 DPR 821, 837 (2015):

> [L]a Ley 243-2011 categoriza a las personas convictas por el delito de actos lascivos de acuerdo a la edad de la víctima. Si la víctima era menor de edad, pero no menor de dieciséis años, el convicto será un Ofensor Sexual Tipo II. Si la víctima no ha cumplido los dieciséis (16) años, el convicto será registrado como un Ofensor Sexual Tipo III. ***La Ley 243-2011 no contempla una categoría de Ofensor Sexual para las personas convictas por el delito de actos lascivos cometido contra una persona mayor de edad.***

(Énfasis suplido).

### D. Hay que honrar la alegación preacordada en el Registro

En primera instancia, me parece necesario comenzar esta última porción de mi análisis subrayando que las alegaciones o acusaciones contra un individuo no constituyen prueba en su contra. El contenido de la alegación preacordada es lo único que se debe considerar como probado, para los fines de evaluar la *convicción* de un ofensor registrado.

Las alegaciones preacordadas entre un acusado y el Estado son un tipo de contrato, que surte efecto una vez el Tribunal lo acepta. *Pueblo v. Santiago Agricourt,* supra, pág. 196; *Pueblo v. Figueroa García,* supra, págs. 809-810. Es decir, el Tribunal viene obligado a evaluar su validez *y las consecuencias de aceptar el misma.*

El Estado no puede utilizar contra un **convicto** las alegaciones, en este caso la minoridad, que no fueron probadas conforme a derecho. Esto tendría el efecto de circunvalar, en los casos referentes al Registro, la presunción de inocencia.

## III.

Por los asuntos previamente discutidos, expediría el recurso de autos, revocaría al Foro Primario y ordenaría la eliminación del peticionario del Registro, por haber cumplido este los diez (10) años inscritos en el mismo.

En San Juan, Puerto Rico, a 29 de abril de 2026.

Alberto Luis Pérez Ocasio
Juez del Tribunal de Apelaciones